1  GEORGE S. CARDONA (SBN 135439)
   Interim City Attorney
2  george.cardona@smgov.net
   KIRSTEN R. GALLER (SBN 227171)
3  Deputy City Attorney
   kirsten.galler@smgov.net
4  HEIDI VON TONGELN (SBN 239331)
   heidi.vontongeln@smgov.net
5  1685 Main Street, Room 310
   Santa Monica, California 90401
6  Telephone: (310) 458-8336
   Facsimile: (310) 395-6727
7
   Attorneys for Defendants
8  CITY OF SANTA MONICA and
   CITY COUNCIL OF THE CITY
9  OF SANTA MONICA

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12 | NMS 1539, LLC, a Delaware limited | Case No.:    2:20-cv-11318-FLA-JPR
   | liability company; NMS 1548, LLC, a |
13 | Delaware limited liability company; | **DEFENDANTS CITY OF SANTA**
   | 1520 7TH STREET, LLC, a California | **MONICA AND CITY COUNCIL OF**
14 | limited liability company; NMS15437, | **THE CITY OF SANTA MONICA'S**
   | LLC, a California limited liability | **NOTICE OF MOTION AND**
15 | company; 1547 7TH STREET, LLC, a | **MOTION TO DISMISS**
   | California limited liability company; | **PLAINTIFFS' COMPLAINT;**
16 | 1557 7TH ST, LLC, a California limited | **MEMORANDUM OF POINTS AND**
   | liability company; 1650 LINCOLN | **AUTHORITIES IN SUPPORT**
17 | NMS, LLC, a California limited liability | **THEREOF**
   | company; NMS1550LINCOLN, LLC, a |
18 | California limited liability company; | [*Motion to Stay Action, Request for*
   | NEBRASKA STUDIOS, LLC, a | *Judicial Notice in Connection with*
19 | Delaware limited liability company; | *Defendants' (1) Motion to Dismiss*
   | 3025 OB MULTIFAMILY LLC, a | *Plaintiffs' Complaint and (2) Motion to*
20 | Delaware limited liability company; | *Stay Action, and* [*Proposed*] *Order filed*
   | WSC 501 BROADWAY, LLC, a | *concurrently herewith*]
21 | California limited liability company; |
   | WSC 601 COLORADO AVE, LLC, a | Hearing Date:   May 14, 2021
22 | California limited liability company; | Hearing Time:   1:30 p.m.
   | NMS 601 WILSHIRE, LLC, a California |
23 | limited liability company; 1313 6TH | Honorable Fernando L. Aenlle-Rocha
   | STREET LLC, a Delaware limited |
24 | liability company; WSC 1318 LINCOLN |
   | BLVD, LLC, a California limited |
25 | liability company; 1323 5TH STREET, |
   | LLC, a California limited liability |
26 | company; 1338 5TH STREET, LLC, a |
   | California limited liability company; |
27 | NMS YALE, LLC, a California limited |
   | liability company; 14155NMS, LLC, a |
28 | Delaware limited liability company; |

1  NMS1430LINCOLN, LLC, a California
   limited liability company; 14375 NMS,
2  LLC, a California limited liability
   company; 1437 6TH STREET, LLC, a
3  California limited liability company;
   LUXE 1441 LINCOLN, LLC, a
4  California limited liability company;
   14255NMS, LLC, a California limited
5  liability company; 1445 9TH STREET,
   LLC, a Delaware limited liability
6  company; 1446 YALE STREET, LLC, a
   Delaware limited liability company;
7  1516 STANFORD STREET, LLC, a
   Delaware limited liability company;
8  1038 10TH STREET, LLC, a Delaware
   limited liability company; 1007
9  LINCOLN BOULEVARD, LLC, a
   Delaware limited liability company;
10 1238 10TH STREET, LLC, a Delaware
   limited liability company; NMS 14277,
11 LLC, a California limited liability
   company; and 1433 EUCLID STREET,
12 LLC, a Delaware limited liability
   company,

13              Plaintiffs,

14      v.

15 CITY OF SANTA MONICA, a
   municipal corporation; CITY COUNCIL
16 OF THE CITY OF SANTA MONICA,
   its governing body, and DOES 1-10,
17 inclusive,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 14, 2021, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6B of the above-titled court located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants City of Santa Monica and City Council of the City of Santa Monica ("Defendants" or "City") will and hereby do move to dismiss the Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants seek to dismiss Plaintiffs' second, third, ninth, and those portions of the sixth and eighth causes of action predicated on third-party harm on the ground that Plaintiffs lack standing to bring such claims and thus the Court does not have subject-matter jurisdiction over those claims.  Defendants also seek to dismiss each and every cause of action in the Complaint for failure to state a claim as a matter of law:

- Plaintiffs' first cause of action for unconstitutional taking lacks merit because Chapter 6.22 of the Santa Monica Municipal Code ("SMMC") is not a physical taking of Plaintiffs' property and Plaintiffs' allegations do not meet the standard for establishing a regulatory taking.  A mere diminution of value is insufficient to demonstrate a taking, and Plaintiffs have no reasonable investment-backed expectation that their properties would be unencumbered by government regulation.

- Plaintiffs' second and third causes of action for violation of the constitutional right to privacy and invasion of the common law right to privacy fail as a matter of law because Plaintiffs lack a legally protectable interest in their tenants' primary residence information, have no reasonable expectation of privacy in such information, which is shared with the City in many other contexts, and any disclosure is not a serious breach.

- Plaintiffs' fourth cause of action for violation of the Contracts Clause is baseless because there is no substantial impairment of their contractual relationships.

Plaintiffs have failed to allege any specific terms purportedly undermined by Chapter 6.22, Plaintiffs could not reasonably expect the regulatory landscape to be unchanged given the extensive regulation of the landlord-tenant relationship, and Plaintiffs can safeguard their contractual rights.

- Plaintiffs' fifth cause of action for excessive fines fails because Plaintiffs do not and cannot allege that the fines are excessive in all circumstances—a required showing for Plaintiffs' facial claim.

- Plaintiffs' sixth cause of action for violation of equal protection and eighth cause of action for violation of substantive due process lack merit because Chapter 6.22 is rationally related to its purpose of protecting tenants and preserving rental housing stock and Plaintiffs' disagreements on policy do not make Chapter 6.22 unconstitutional on its face.  Plaintiffs' eighth cause of action challenging the facial validity of certain terms in Chapter 6.22 on vagueness grounds fails because Plaintiffs do not and cannot allege that the terms are impermissibly vague in all of their applications.

- Plaintiffs' seventh cause of action for violation of procedural due process fails because the City Council exercised its legislative functions in a lawful manner and no other process is due to Plaintiffs.

- Plaintiffs' ninth cause of action for violation of the right to freedom of movement is baseless because Chapter 6.22 does not burden *inter*state travel and a bona fide residency requirement does not violate a tenant's constitutional freedom of movement.

- This Court should decline to exercise supplemental jurisdiction over Plaintiffs' tenth and eleventh causes of action alleging preemption by and violation of the California Coastal Act and preemption by certain California housing statutes, because Plaintiffs' federal law claims are all subject to dismissal.  Even if the Court were to entertain those claims, Plaintiffs fail to allege any preemption because Chapter 6.22 is consistent with state law, and Plaintiffs' claim that

Chapter 6.22 violates the Coastal Act is meritless because an ordinance is not a development under the Act.

- Plaintiffs' twelfth claim seeking declaratory judgment should be dismissed because Plaintiffs have failed to sufficiently state any substantive claims.

- If the Court does not dismiss each of Plaintiffs' claims alleging violation of 42 U.S.C. § 1983 and the California Constitution, at a minimum, the City Council should be dismissed as a defendant because they are legislatively immune.

- If the Court does not dismiss each of Plaintiffs' claims alleging violation of state law and the California constitution (other than takings), at a minimum, this Court should dismiss the portions of those claims seeking damages because Defendants are statutorily immune from damages arising out of the adoption of an ordinance and Plaintiffs cannot recover damages for violation of the California constitutional provisions on privacy, equal protection, due process, or impairment of contracts.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 28, 2021.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the concurrently filed request for judicial notice, the concurrently filed motion to stay action, all pleadings and papers on file in this action, and such further evidence and argument as may be presented at or before the hearing on this matter.

Dated:  February 5, 2021                    Respectfully submitted,


By:_____*/s/ Kirsten R. Galler*_____
              Kirsten R. Galler

*Attorneys for Defendants*
CITY OF SANTA MONICA and
CITY COUNCIL OF THE CITY
OF SANTA MONICA

# <u>**TABLE OF CONTENTS**</u>

Page

I.     INTRODUCTION ................................................................1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................2

III.   LEGAL STANDARD ............................................................4

IV.    ARGUMENT ....................................................................5

      A.    Plaintiff Property Owners Lack Standing to Bring Claims on
           Behalf of Their Tenants ...............................................5

      B.    Plaintiffs' Privacy-based Claims Lack Merit.........................8

      C.    Chapter 6.22 Does Not Effect a Physical Taking; Nor Have
           Plaintiffs Plausibly Alleged a Regulatory Taking ...............11

      D.    The City Did Not Violate Plaintiffs' Procedural Due Process
           Rights in Adopting Chapter 6.22 .................................14

      E.    Plaintiffs Have Failed to Plausibly Allege Either an as Applied
           or Facial Impairment of Contracts Claim .......................15

      F.    Plaintiffs' Remaining Facial Constitutional Challenges Fail .............18

           1.    Plaintiffs Cannot Establish That Chapter 6.22's
                Enforcement Provision Is Always Grossly
                Disproportional ...........................................18

           2.    Plaintiffs' Equal Protection and Substantive Due
                Process Claims Fail Because Chapter 6.22 Is
                Rationally Related to a Legitimate State Interest.....................20

           3.    Chapter 6.22 Is Not Impermissibly Vague in All
                of Its Applications.........................................23

           4.    Chapter 6.22's Bona Fide Residence Requirement
                Does Not Violate the Right to Travel........................24

      G.    Plaintiffs Have Failed to Plausibly Allege That Chapter 6.22
           Is Preempted by or Violates California Law .......................26

           1.    Chapter 6.22 Is a Valid Exercise of the City's
                Police Power, Consistent with State Law, and
                Thus Not Preempted .................................................26

iv

2. Chapter 6.22 Does Not Violate the California Coastal Act Because It Is Not "Development" Requiring Coastal Commission Approval ................................. 28

H. Plaintiffs' Derivative Declaratory Relief Claim Should Be Dismissed ............................................................................. 29

I. The City Council Is Absolutely Immune from the Section 1983 and State Constitutional Claims ...................................... 29

J. Damages Are Not Recoverable on Plaintiffs' State-law Claims .................................................................... 30

V. CONCLUSION ............................................................................. 30

v

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Aaron v. Aguirre,*
   2006 WL 8455871 (S.D. Cal. Dec. 13, 2006) .................................................30

*Alameda Cty. Deputy Sheriff's Ass'n v. Alameda Cty. Employees' Ret.
   Ass'n,*
   9 Cal. 5th 1032 (2020) ...................................................................................16

*Apt. Ass'n of Greater L.A. v. City of Beverly Hills,*
   2019 WL 4137414 (C.D. Cal. July 17, 2019) ...................................................8

*Apt. Ass'n of Greater L.A. v. City of Los Angeles,*
   2019 WL 7856767 (C.D. Cal. Nov. 1, 2019) ..................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................5

*Attorney General of New York v. Soto-Lopez,*
   476 U.S. 898 (1986) .......................................................................................25

*Ballinger v. City of Oakland,*
   398 F. Supp. 3d 560 (N.D. Cal. 2019) ...........................................................17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .........................................................................................5

*Better Hous. for Long Beach v. Newsom,*
   452 F. Supp. 3d 921 (C.D. Cal. 2020) ...........................................................12

*Big Creek Lumber Co. v. Cty. of Santa Cruz,*
   38 Cal. 4th 1139 (2006) ..................................................................................27

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) .........................................................................................29

*Botosan v. Paul McNally Realty,*
   216 F.3d 827 (9th Cir. 2000) ..........................................................................23

*Bowers v. Whitman,*
   671 F.3d 905 (9th Cir. 2012) ..........................................................................22

*Braunstein v. Arizona Dept. of Transp.,*
   683 F.3d 1177 (9th Cir. 2012) ..........................................................................7

*California Teachers Ass'n v. State Bd. of Educ.,*
   271 F.3d 1141 (9th Cir. 2001) ...................................................................23, 24

*Calop Bus. Sys., Inc. v. City of Los Angeles,*
   984 F. Supp. 2d 981 (C.D. Cal. 2013) .............................................................5

vi

## <u>TABLE OF AUTHORITIES (*cont'd*)</u>

Page(s)

*City and Cty. of San Francisco v. Sainez,*
  77 Cal. App. 4th 1302 (2000)........................................................................19

*City of Dana Point v. California Coastal Comm'n,*
  217 Cal. App. 4th 170 (2013)........................................................................28

*City of Oceanside v. McKenna,*
  215 Cal. App. 3d 1420 (1989)........................................................................25

*Clapper v. Amnesty Intern. USA,*
  568 U.S. 398 (2013) .........................................................................................5

*Clausing v. San Francisco Unified Sch. Dist.,*
  221 Cal. App. 3d 1224 (1990)........................................................................30

*Colony Cove Properties, LLC v. City of Carson,*
  888 F.3d 445 (9th Cir. 2018)..........................................................................13

*Copley Press, Inc. v. Super. Ct.,*
  39 Cal. 4th 1272 (2006)...................................................................................11

*Danekas v. S.F. Residential Rent Stabilization & Arb. Bd.,*
  95 Cal. App. 4th 638 (2001)...........................................................................17

*Discount Inn, Inc. v. City of Chicago,*
  72 F. Supp. 3d 930 (N.D. Ill. 2014)...............................................................19

*Energy Reserves Group, Inc. v. Kansas Power and Light Co.,*
  459 U.S. 400 (1983) .......................................................................................17

*Esparza v. Cty. of Los Angeles,*
  224 Cal. App. 4th 452 (2014).........................................................................30

*F.C.C. v. Beach Commun., Inc.,*
  508 U.S. 307 (1993) ..................................................................................21, 22

*F.C.C. v. Fla. Power Corp.,*
  480 U.S. 245 (1987) .......................................................................................12

*First Resort, Inc. v. Herrera,*
  860 F.3d 1263 (9th Cir. 2017)........................................................................24

*Fleck and Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.,*
  471 F.3d 1100 (9th Cir. 2006)..................................................................6, 8, 9

*Garcia v. Four Points Sheraton LAX,*
  188 Cal. App. 4th 364 (2010).........................................................................23

*Gompper v. VISX, Inc.,*
  298 F.3d 893 (9th Cir. 2002)............................................................................5

1
2

# TABLE OF AUTHORITIES (*cont'd*)

Page(s)

3
*Griffin v. Green Tree Servicing, LLC*,
 166 F. Supp. 3d 1030 (C.D. Cal. 2015)........................................29

4
*Hensler v. City of Glendale*,
5
 8 Cal. 4th 1 (1994)........................................30

6
*Hernandez v. Hillsides, Inc.*,
 47 Cal. 4th 272 (2009)........................................8

7
*Hill v. Colorado*,
8
 530 U.S. 703 (2000)........................................24

9
*Homeaway.com Inc., v. City of Santa Monica*,
 2018 WL 1281772 (C.D. Cal. Mar. 9, 2018)........................................29

10
*Homeaway.com, Inc. v. City of Santa Monica*,
11
 2018 WL 3013245 (C.D. Cal. June 14, 2018)........................................26

12
*HomeAway.com, Inc. v. City of Santa Monica*,
 918 F.3d 676 (9th Cir. 2019)........................................2

13
*Hotel & Motel Ass'n of Oakland v. City of Oakland*,
14
 344 F.3d 959 (9th Cir. 2003)........................................15, 23

15
*Hotop v. City of San Jose*,
 982 F.3d 710 (9th Cir. 2020)........................................passim

16
*Humanitarian L. Project v. U.S. Treas. Dept.*,
17
 578 F.3d 1133 (9th Cir. 2009)........................................24

18
*In re Crawford*,
 194 F.3d 954 (9th Cir. 1999)........................................9

19
*In re Gilead Scis. Sec. Litig.*,
20
 536 F.3d 1049 (9th Cir. 2008)........................................5

21
*In re Luis F.*,
 177 Cal. App. 4th 176 (2009)........................................9

22
*In re Toll Roads Litigation*,
23
 2018 WL 4945314 (C.D. Cal. July 31, 2018).........................................19

24
*Int'l Org. of Masters, Mates & Pilots v. Andrews*,
 831 F.2d 843 (9th Cir. 1987)........................................7

25
*Javor v. Taggart*,
26
 98 Cal. App. 4th 795 (2002)........................................30

27
*Katzberg v. Regents of U. of California*,
 29 Cal. 4th 300 (2002)........................................30

28

# <u>TABLE OF AUTHORITIES (*cont'd*)</u>

Page(s)

*Killgore v. City of S. El Monte*,
2020 WL 4258584 (C.D. Cal. Apr. 24, 2020)....................................13

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ....................................................................6, 8

*Levald, Inc. v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993)...................................................21, 22

*Lifschultz v. City of San Juan Capistrano*,
2020 WL 2510650 (C.D. Cal. Mar. 9, 2020) .................................13

*Lima v. U.S. Dept. of Educ.*,
947 F.3d 1122 (9th Cir. 2020).......................................................26

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005) .......................................................................14

*LL Liquor, Inc. v. Montana*,
912 F.3d 533 (9th Cir. 2018).........................................................16

*Lugosi v. Universal Pictures*,
25 Cal. 3d 813 (1979)......................................................................9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .........................................................................5

*Martinez v. Bynum*,
461 U.S. 321 (1983) .......................................................................25

*Matsuda v. City and Cty. of Honolulu*,
512 F.3d 1148 (9th Cir. 2008)........................................................16

*Matsuo v. U.S.*,
586 F.3d 1180 (9th Cir. 2009)........................................................24

*Mendoza v. Garrett*,
358 F. Supp. 3d 1145 (D. Or. 2018)................................................25

*Moore v. City of Costa Mesa*,
886 F.2d 260 (9th Cir. 1989).........................................................13

*Moreno v. Hanford Sentinel, Inc.*,
172 Cal. App. 4th 1125 (2009).........................................................7

*Nelson v. City of Selma*,
881 F.2d 836 (9th Cir. 1989).........................................................21

*Nguyen v. City of Buena Park*,
2020 WL 5991616 (C.D. Cal. Aug. 18, 2020)............................17, 21

1
2

# TABLE OF AUTHORITIES (*cont'd*)

Page(s)

3

*Nunez by Nunez v. City of San Diego*,
  114 F.3d 935 (9th Cir. 1997) ..................................................... 25

4

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't
  Administration*,

5

  860 F.3d 1228 (9th Cir. 2017) ...................................................... 6

6

*Patel v. City of Montclair*,
  2012 WL 12847232 (C.D. Cal. Mar. 21, 2012) .............................. 7

7

8

*Penn Central Transportation Co. v. New York City*,
  438 U.S. 104 (1978) ................................................................. 12

9

*People v. Braum*,
  49 Cal. App. 5th 342 (2020) ...................................................... 19

10

11

*Pimentel v. City of Los Angeles*,
  974 F.3d 917 (9th Cir. 2020) ......................................... 18, 19, 20

12

*Porto v. City of Laguna Beach*,
  2012 WL 3810475 (C.D. Cal. Aug. 7, 2012) ............................... 29

13

14

*Rancho de Calistoga v. City of Calistoga*,
  800 F.3d 1083 (9th Cir. 2015) .............................................. 13, 14

15

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004) ........................................ 17, 20, 22

16

17

*S.D. Myers, Inc. v. City and Cty. of San Francisco*,
  253 F.3d 461 (9th Cir. 2001) ................................................... 9, 18

18

*San Francisco Apt. Ass'n v. City and Cty. of San Francisco*,
  881 F.3d 1169 (9th Cir. 2018) ............................................ passim

19

20

*San Francisco Tomorrow v. City and Cty. of San Francisco*,
  229 Cal. App. 4th 498 (2014) .................................................... 15

21

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006) .................................................... 14

22

23

*SCC Acquisitions, Inc. v. Super. Ct.*,
  243 Cal. App. 4th 741 (2015) ...................................................... 6

24

*Schmidt v. Contra Costa Cty.*,
  693 F.3d 1122 (9th Cir. 2012) .............................................. 29, 30

25

26

*Schnuck v. City of Santa Monica*,
  935 F.2d 171 (9th Cir. 1991) ..................................................... 22

27

*Sherwin-Williams Co. v. City of Los Angeles*,
  4 Cal. 4th 893 (1993) ................................................................ 26

28

x

## <u>TABLE OF AUTHORITIES (*cont'd*)</u>

Page(s)

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................4

*Suitum v. Tahoe Regl. Plan. Agency*,
  520 U.S. 725 (1997). ...................................................................13

*Sveen v. Melin*,
  138 S. Ct. 1815 (2018) .................................................................16

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..........................................................5

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regl. Plan. Agency*,
  535 U.S. 302 (2002) .....................................................................11

*Vanguard Medical Management Billing, Inc. v. Baker*,
  2018 WL 6137198 (C.D. Cal. Apr. 26, 2018).....................................17

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) .....................................................................18

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .........................................................4

*Willis v. City of Seattle*,
  943 F.3d 882 (9th Cir. 2019) .........................................................18

*Yee v. City of Escondido, Cal.*,
  503 U.S. 519 (1992) .....................................................................12

### CONSTITUTIONAL PROVISIONS

Cal. Const., art. XI, § 7 ....................................................................26

### STATUTES

28 U.S.C. § 1367............................................................................26

42 U.S.C. § 1983........................................................................4, 29

Cal. Civil Code § 1940.3 ..................................................................11

Cal. Gov't Code § 818.2 ..................................................................30

Cal. Gov't Code § 65581 ..................................................................27

Cal. Gov't Code § 65589.5 ...............................................................27

Cal. Gov't Code § 65590 ..................................................................27

Cal. Gov't Code § 65800 ..................................................................27

## TABLE OF AUTHORITIES (*cont'd*)

Page(s)

Cal. Gov't Code § 66300 ......................................................... 27

Cal. Pub. Res. Code § 30005 ................................................... 27

Cal. Pub. Res. Code § 30210 ................................................... 27

Cal. Pub. Res. Code § 30604 ................................................... 27

## OTHER AUTHORITIES

SMMC § 1.10.110 ................................................................... 20

SMMC § 3.08.070 ................................................................... 10

SMMC § 4.27.040 ................................................................... 10

SMMC § 6.20.010 ................................................................... 10

SMMC § 6.20.021 ................................................................... 10

SMMC § 6.22.010 ................................................................ 14, 19, 28

SMMC § 6.22.100 ................................................................... 18

SMMC § 6.22.130 ..................................................................... 4

SMMC § 6.22.140 ................................................................... 19

SMMC § 9.64.050 ................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT,
Case No. 2:20-cv-11318-LFA-JPR

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Consistent with its longstanding commitment to protect tenants and preserve rental housing stock, the City Council for the City of Santa Monica unanimously adopted an ordinance to add Chapter 6.22 on Residential Leasing Regulations ("Chapter 6.22") to the Santa Monica Municipal Code ("SMMC").  Chapter 6.22 imposes a one-year minimum lease requirement, prohibits the rental of furnished units, and requires that leases be made to tenants who are natural persons and who will use the unit as their primary residence.  At the public meeting when the ordinance was first introduced, the City Council made a policy decision not to adopt a more permissive version of the ordinance that would have required that a one-year term offer be made.  Plaintiffs disagree with that policy decision and have brought this action—as well as a parallel state action—to challenge Chapter 6.22 on various constitutional and state-law grounds.  Plaintiffs, however, lack standing to bring several of their claims, and each of their claims fail as a matter of law.

*First*, this Court lacks subject matter jurisdiction over Plaintiffs' second, third, ninth, and those portions of the sixth and eighth causes of action predicated on third-party harm.  For those claims, Plaintiffs have failed to plausibly allege any injury to themselves resulting from the alleged constitutional and common law violations and lack standing to bring claims on behalf of their tenants.  *Second*, Plaintiffs' privacy-based claims fail as a matter of law because Plaintiffs have no reasonable expectation of privacy in a tenant's residency documentation— information that is shared with the City in many other contexts.  *Third*, Chapter 6.22 is not a physical taking of Plaintiffs' property and Plaintiffs' allegations fail to support a regulatory taking.  *Fourth*, Plaintiffs' procedural due process claim lacks merit because the City Council exercised its legislative functions in a lawful manner and no other process is due to Plaintiffs.  *Fifth*, Plaintiffs have failed to sufficiently allege a Contracts Clause violation because, among other things, they

1

do not specify any terms that were purportedly substantially impaired.  *Sixth*, Plaintiffs' facial excessive fines claim fails because Plaintiffs do not and cannot allege that the fines are excessive in all circumstances.  *Seventh*, Plaintiffs' facial equal protection and substantive due process claims are baseless because Chapter 6.22 is rationally related to its purpose of protecting tenants and preserving rental housing stock, and Plaintiffs' disagreements on policy do not make Chapter 6.22 unconstitutional.  *Eighth*, Plaintiffs' hypotheticals challenging certain defined terms as vague are insufficient as a matter of law to show that Chapter 6.22 should be facially invalidated.  *Ninth*, Chapter 6.22's imposition of a bona fide residency requirement does not violate a tenant's constitutional freedom of movement.  *Tenth*, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.  Even if the Court were to entertain those claims, Plaintiffs fail to allege any preemption because Chapter 6.22 is consistent with state law and the Coastal Act claim is meritless because an ordinance is not a development under the Act.  *Eleventh*, Plaintiffs' derivative declaratory judgment claim should be dismissed because they have failed to sufficiently state any substantive claims.  *Twelfth*, at a minimum, the City Council should be dismissed as a defendant because it has legislative immunity.  *Finally*, at the very least, Plaintiffs' request for damages on their state-law claims should be dismissed because Defendants are statutorily immune and Plaintiffs cannot recover damages on state constitutional claims (other than a properly stated takings claim).

For these reasons, this Court should dismiss the Complaint with prejudice.

## II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

The City of Santa Monica occupies just over eight square miles and has a resident population of around 90,000.  *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 679 (9th Cir. 2019).  A small city without room to expand and with approximately 75% of its residents in rental housing, the City has consistently dedicated policies to promoting the preservation, production, and

2

affordability of housing and protecting tenants and existing rental housing stock. Compl. ¶ 48; Ex. 1 at 1; Ex. A at 10–11; *see* Compl. ¶¶ 52–61.[1]

In response to concerns raised by the community and the City Council related to the adverse effects of "medium-term" leases—rentals longer than 30 days but less than one year—on raising rents and erosion of permanent rental housing stock, the Council conducted a public hearing on August 25, 2020 to introduce and hold a first reading of Ordinance No. 2650 (CCS), adopting SMMC Chapter 6.22: Residential Leasing Regulations.  Compl. ¶¶ 58, 63, 67; Ex. A at 9–10.  The draft ordinance required landlords to offer a one-year lease and the tenant to be a natural person living in the unit as their primary residence. Ex. A at 11–13.  Prior to the hearing, the City received and publicly posted eight written comments from members of the public on its staff report and draft ordinance.  Exs. A, B.  Of these comments, five urged the City Council to amend the draft ordinance, primarily to require one-year minimum lease terms and to prohibit leasing furnished units.  Ex. B at 32–36, 41–47.  During the hearing, the City received additional comments from eight members of the public, including those who encouraged similar revisions to the draft ordinance.  Compl. ¶ 69; Ex. C at 59.  The City Council unanimously agreed to revise the draft ordinance to require a one-year minimum lease and prohibit the rental of furnished units.  Compl. ¶¶ 69, 71; Ex. C at 59–60.

Two weeks later, at its September 8, 2020 meeting, the City Council unanimously adopted the ordinance, as amended on August 25, 2020.  Compl. ¶ 72; Ex. 1 at 11.  Also at that meeting, Council directed staff to return with proposed amendments to Chapter 6.22 to address potential concerns from residents.  Comp. ¶ 74; Ex. D at 68.  On October 13, 2020, the City Council conducted a public hearing to introduce Ordinance No. 2655 (CCS), which incorporated narrow

---

[1] Numbered exhibits refer to attachments to the Complaint; lettered exhibits are attached to the City's concurrently filed Request for Judicial Notice; and "City" refers to both named Defendants in this action unless context dictates otherwise.

3

exemptions to the requirements of Chapter 6.22 in response to concerns from residents.  Compl. ¶ 75; Ex. D at 70–71.  The City Council adopted Ordinance No. 2655 at its next meeting on October 27.  Ex. E at 92.

As authorized by Section 6.22.130, the City has promulgated regulations for implementation of Chapter 6.22.  Ex. F.  The regulations provide guidance on noticing requirements and further clarify that Chapter 6.22 does not apply to single room occupancy housing or legal nonconforming corporate housing, including any such uses that were approved by development or settlement agreement, like those entered into by and between the City and Plaintiffs.  *Id*. at 96.

On December 7, 2020, the same 32 Plaintiffs as in this action filed a petition for writ of mandate against the City of Santa Monica and the Santa Monica City Council in L.A. Superior Court, challenging the constitutionality of Ordinance No. 2650, asserting it is preempted by state law, and seeking to invalidate it.  Ex. G.

One week later, on December 14, 2020, Plaintiffs filed their federal complaint in this action against Defendants.  Plaintiffs' complaint brings 12 claims and, like the state petition, seeks to invalidate Ordinance No. 2650 on several grounds, including that the ordinance allegedly deprives Plaintiffs of various rights under the U.S. and California Constitutions, is preempted by the California Coastal Act and certain California housing statutes, and failed to provide Plaintiffs adequate procedural safeguards.  Plaintiffs also seek damages under 42 U.S.C. § 1983.

### III.   LEGAL STANDARD

Lack of standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)," because standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "[A]t the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" for Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s]

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts accept factual allegations as true, this rule is "inapplicable to legal conclusions." *Id*. Courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The factual allegations must "rise above the speculative level" and do more than "create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555, 561 (citation omitted). In evaluating whether a plaintiff has carried its pleading burden, a court "'generally consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice'" as well as a "writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted). When it is clear that "the complaint could not be saved by any amendment," a court may dismiss a claim with prejudice. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation omitted).

## IV.   ARGUMENT

### A.   Plaintiff Property Owners Lack Standing to Bring Claims on Behalf of Their Tenants

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A party must have Article III standing to challenge an ordinance." *Calop Bus. Sys., Inc. v. City of Los Angeles*, 984 F. Supp. 2d 981, 998 (C.D. Cal. 2013). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). "Article III requires 'a plaintiff [to] demonstrate standing for each claim he seeks to

1   press and for each form of relief that is sought.'"  *Oregon Prescription Drug*

2   *Monitoring Program v. U.S. Drug Enf't Administration*, 860 F.3d 1228, 1233 (9th

3   Cir. 2017).  Courts also consider "prudential limitations" on standing, which

4   "restrict the grounds a plaintiff may put forward in seeking to vindicate his personal

5   stake." *Fleck and Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471

6   F.3d 1100, 1104 (9th Cir. 2006).  Chief among such limitations is the "rule that a

7   party 'generally must assert his own legal rights and interests, and cannot rest his

8   claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*,

9   543 U.S. 125, 129 (2004).  Plaintiffs fail to meet these threshold requirements for

10  several of their claims.

11       Plaintiffs' claim for violation of the federal and California constitutional right

12  to privacy does not meet the Article III requirements for standing.  Plaintiffs allege

13  that Chapter 6.22 violates the "inalienable rights to privacy" because it purportedly

14  "intrudes on the inhabitation of bedrooms and living rooms in the City" and the

15  required primary residency documentation "contains highly sensitive and private

16  information about the City's tenants."  Compl. ¶¶ 110, 112.  But none of these

17  alleged harms are injuries suffered by Plaintiffs—a group of LLCs that are "owners

18  of 32 apartment buildings or projects in the City."  *Id.* ¶ 6.  Indeed, a "corporation is

19  not entitled to 'purely personal' guarantees—those rights that have historically been

20  granted to protect individuals." *Fleck*, 471 F.3d at 1104.  It is "hard to imagine a

21  constitutional guarantee that could be more inherently personal [than the right to

22  privacy] and therefore unavailable to a [business] entity," such as the LLCs that

23  comprise Plaintiffs.  *Id.*  The same is true of the right to privacy under the

24  California constitution.  *SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th

25  741, 755 (2015) ("Article I, section 1 of the California Constitution protects the

26  privacy rights of 'people' only.").  As in *Fleck* where a corporation claimed a

27  violation of the right to privacy, Plaintiffs here have "failed to allege an injury in

28  fact sufficient to make out a case or controversy under Article III."  *Id.* at 1104.

Plaintiffs likewise do not have Article III standing to assert a common law claim for invasion of privacy.  Plaintiffs allege that the primary residency requirement invades Plaintiffs' and their tenants "reasonable expectation of privacy," Compl. ¶ 121, but as in their constitutional privacy claim, Plaintiffs have alleged no injury in fact to themselves resulting from this claim.  *See, e.g.*, *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1131 (2009) (no standing to sue for invasion of third party's privacy).

Nor have Plaintiffs asserted any injury to themselves purporting to result from Plaintiffs' ninth cause of action for violation of the freedom of movement. Rather, Plaintiffs allege only that Chapter 6.22 violates this right by requiring that "*tenants* must reside in the City for at least a year," "limiting *tenants* to only 'one primary residence,'" and "requir[ing] *tenants* to demonstrate their residence." Compl. ¶ 191 (emphases added).  Plaintiffs do not (and cannot) allege that their own freedom of movement was improperly restricted by Chapter 6.22, and thus lack Article III standing.  *See Int'l Org. of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843, 846–47 (9th Cir. 1987) (nonresidents lacked standing to bring right to travel claim "because their freedom to leave Seattle is not affected by the statute").

Plaintiffs' equal protection claim is also primarily based on harm to tenants, focusing on the alleged disparate treatment of tenants subject to the requirements of Chapter 6.22.  Compl. ¶¶ 152–55.  But "[o]nly those who are 'personally denied' equal treatment have a cognizable injury under Article III."  *Braunstein v. Arizona Dept. of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012); *see also Patel v. City of Montclair*, 2012 WL 12847232, at *4 (C.D. Cal. Mar. 21, 2012) ("Plaintiffs lack standing to bring an equal protection claim on behalf of the tenants.").  Similarly, Plaintiffs' substantive due process claim, which largely repeats the other alleged constitutional violations, focuses on alleged harm to tenants and does not establish any injury in fact to themselves.  Compl. ¶¶ 178–79, 181–82.  Plaintiffs thus lack standing to assert those portions of their substantive due process claim.

Even if Plaintiffs could meet the Article III standing requirements (and they cannot), this Court should decline to exercise jurisdiction over the above-described claims for prudential reasons.  The prudential rule is that a plaintiff may not rest their claims on the interests of third parties—here, the tenants—because "the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 128–30.  "Exceptions to the prudential rule are disfavored and a party seeking to champion the rights of third persons must demonstrate that, '[f]irst, [it] has a 'close' relationship with the person who possesses the right ... [and s]econd ... there is a 'hindrance' to the possessor's ability to protect his own interests.'"  *Fleck*, 471 F.3d at 1105 n.5.  The Complaint contains no allegations that Plaintiff landlords are sufficiently aligned with their tenants' rights or that the tenants are hindered in bringing their own claims.  *See, e.g.*, *Apt. Ass'n of Greater L.A. v. City of Beverly Hills*, 2019 WL 4137414, at *3 n.2 (C.D. Cal. July 17, 2019) ("Plaintiffs have not sufficiently alleged why they have standing to represent their tenants' privacy interests").  And "exceptions to the prudential rule presuppose a litigant who has already met the constitutional requirements," *Fleck*, 471 F.3d at 1105, which Plaintiffs have not.  This Court should therefore dismiss the second, third, ninth, and those portions of the sixth and eighth causes of action premised on harm to third parties for lack of subject matter jurisdiction.

**B.    Plaintiffs' Privacy-based Claims Lack Merit**

Even if Plaintiffs had standing to bring their privacy-related claims (and they do not), Plaintiffs have failed to plausibly allege that the primary residency documentation requirement states a claim for common law invasion of privacy or violates the constitutional right to privacy.

An invasion of privacy claim looks to the "nature of any intrusion upon reasonable expectations of privacy" and "the offensiveness or seriousness of the intrusion."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 288 (2009).  Similarly,

8

"[t]o state a claim for a violation of the right to privacy under the California Constitution, [Plaintiffs] must allege facts sufficient to raise a plausible inference that they have a legally protected privacy interest, a reasonable expectation of privacy under the circumstances, and a 'serious invasion' of privacy by the City that constitutes 'an egregious breach of the social norms underlying the privacy right.'" *San Francisco Apt. Ass'n v. City and Cty. of San Francisco*, 881 F.3d 1169, 1178 (9th Cir. 2018) ("*SFAA*"); *see In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (federal standard focused on nature and "offensiveness or seriousness of the intrusion" and consideration of "proper government interest"). And because the constitutional claim is a facial challenge, Plaintiffs must "'establish that no set of circumstances exists under which the [Ordinance] would be valid.'" *S.D. Myers, Inc. v. City and Cty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001).

For the same reasons Plaintiffs lack standing, they do not state a constitutional or common law privacy claim. They assert no privacy interest of their own. And, as property owners, they do not have a privacy interest in their tenant's primary residence documentation. The "state constitutional right of privacy is personal and may not be asserted derivatively." *In re Luis F.*, 177 Cal. App. 4th 176, 191 (2009). The federal right is likewise personal. *See Fleck*, 471 F.3d at 1105. The common law right is similarly a "'personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded, that is, plaintiff must plead and prove that his privacy has been invaded.'" *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 821 (1979).

Even if Plaintiffs had a legally protectable privacy interest (and they do not), Plaintiffs' claim still fails because they do not have a reasonable expectation of privacy in the information and any disclosure is not a serious breach. Indeed, when similar leasing documentation requirements have been challenged as invading the right to privacy on Fourth Amendment or state constitutional grounds, courts have resoundingly rejected such challenges. *E.g.*, *Hotop v. City of San Jose*, 982 F.3d

9

710, 715 (9th Cir. 2020) (affirming dismissal where landlords failed to establish that "they have a reasonable expectation of privacy in the information [on rent-stabilized units] that must be disclosed"); *SFAA*, 881 F.3d at 1178–79 (disclosure of tenant buyout information did not violate state constitutional right to privacy); *Apt. Ass'n of Greater L.A. v. City of Los Angeles*, 2019 WL 7856767, at *3–4 (C.D. Cal. Nov. 1, 2019) ("*City of L.A.*") (no reasonable expectation of privacy in tenant rental information).  In each of these cases, the court has pointed to the inability to establish a "reasonable expectation of privacy in information that, generally speaking, they already disclose to the City in other contexts." *Hotop*, 982 F.3d at 715–16 (citing cases); *see also City of L.A.*, 2019 WL 7856767, at *3–4.

Here, too, Plaintiffs purport to claim a reasonable expectation of privacy in residency documentation and the "inhabitation of bedrooms" when this and similar information is already disclosed to the City in several other contexts.  For example, all multi-unit residential developments providing on-site affordable housing units must submit "an annual report to the City" with "the monthly rent (or total housing cost if an ownership unit), vacancy information for each affordable unit for the prior year, [and] verification of income of the household occupying each affordable unit throughout the prior year," among other information.  Ex. H at 165 (SMMC § 9.64.050(H)).  To obtain a preferential parking permit on a residential street, an applicant must "present proof of residency in the preferential parking zone."  Ex. I (SMMC § 3.08.070(a).)  Long-term residents or owners who seek to engage in home-sharing must submit proof that the proposed home-share is their primary residence as demonstrated by "motor vehicle registration, driver's license, California state identification card, voter registration, income tax return, property tax bill, or a utility bill."  Ex. J (SMMC §§ 6.20.010(l), 6.20.021(a)(5)).  To obtain an occupancy permit following the withdrawal of units pursuant to the Ellis Act, the owner must provide, among other things, unit descriptions and the names of all persons who will be residing in the units.  Ex. K (SMMC § 4.27.040); Ex. L at 181-

10

82.  Proof of residency must also be provided to register for community classes or activities.  Ex. M.  These are but a few of the examples where proof of residency and other similar information is disclosed to the City in a variety of contexts.

Simply put, Plaintiffs cannot bring privacy-based claims when the "complaint does not contain any factual allegations distinguishing the information at issue in this case from the similar information landlords [and residents] already provide to the City in other contexts under regulations whose validity has not been challenged."  *Hotop*, 982 F.3d at 715; *see also SFAA*, 881 F.3d at 1179 (same).[2]  As in *Hotop*, Plaintiffs' "complaint fails to allege facts plausibly suggesting that they have a reasonable expectation of privacy in the information that must be disclosed under the challenged provision," 982 F.3d at 715, and their second and third claims for relief should be dismissed.

## C.  Chapter 6.22 Does Not Effect a Physical Taking; Nor Have Plaintiffs Plausibly Alleged a Regulatory Taking

Plaintiffs' first claim for relief alleges that Chapter 6.22 is an unconstitutional physical and regulatory taking.  This claim is wholly without merit.

The Supreme Court's decision in *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regl. Plan. Agency*, 535 U.S. 302 (2002), is dispositive of Plaintiffs' physical taking claim.  As the Court explained, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner."  535 U.S. at 322 (citation omitted).  "But a government regulation that merely prohibits landlords from evicting tenants unwilling to pay a higher rent" or "*that bans certain private uses of*

---

[2] Plaintiffs profess concern that the City would be "unchecked" in its power to obtain information of tenants, particularly undocumented residents, and provide such information to others.  Compl. ¶ 113.  But this ignores that California Civil Code Section 1940.3 already restricts a public entity from compelling a landlord to inquire, compile, or provide information on a tenant's immigration or citizenship status, and the California Public Records Act includes numerous exemptions "to protect the privacy of persons whose data or documents come into governmental possession." *Copley Press, Inc. v. Super. Ct.*, 39 Cal. 4th 1272, 1282 (2006).  Chapter 6.22's documentation requirements must be construed in light of these restrictions.

1  *a portion of an owner's property*" "does not constitute a categorical taking." *Id.* at

2  322–23 (emphasis added).  "This longstanding distinction" "makes it inappropriate

3  to treat cases involving physical takings as controlling precedents for the evaluation

4  of a claim that there has been a 'regulatory taking,' and vice versa." *Id.* at 323.

5  Indeed, treating "regulations prohibiting private uses" "as *per se* takings would

6  transform government regulation into a luxury few governments could afford." *Id.*

7         There can be no question here that the regulation at issue is one that bans

8  certain private uses of property—namely, rental of furnished units for less than a

9  year.  "[S]tatutes," like the one here, "regulating the economic relations of landlords

10 and tenants are not *per se* takings." *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252

11 (1987).  "When a landowner decides to rent his land to tenants," it is permissible for

12 the government to "require the landowner to accept tenants he does not like,

13 without automatically having to pay compensation." *Yee v. City of Escondido,*

14 *Cal.*, 503 U.S. 519, 529 (1992) (internal citation omitted).  Chapter 6.22 is a

15 regulation of Plaintiffs' "*use* of their property, and thus does not amount to a *per se*

16 taking." *Id.* at 532 (original emphasis); *see also Hotop*, 982 F.3d at 716 (disclosure

17 obligations in city's apartment rent ordinance were not a physical taking).

18        Nor have Plaintiffs stated a regulatory taking claim.  Such a claim is

19 governed by the multifactor test set forth in *Penn Central Transportation Co. v.*

20 *New York City*, 438 U.S. 104 (1978).  *See also Better Hous. for Long Beach v.*

21 *Newsom*, 452 F. Supp. 3d 921, 935 (C.D. Cal. 2020) (same California standard).

22 This requires a court to consider "(1) '[t]he economic impact of the regulation on

23 the claimant,' (2) 'the extent to which the regulation [interferes] with distinct

24 investment-backed expectations,' and (3) 'the character of the government action.'"

25 *Hotop*, 983 F.3d at 715 (quoting *Penn Central*, 438 U.S. at 124).  In bringing this

26 facial claim, Plaintiffs "face an 'uphill' battle, since it is difficult to demonstrate

27 that 'mere enactment' of a piece of legislation 'deprived [the owners] of

28 economically viable use of [their] property.'" *Suitum v. Tahoe Regl. Plan. Agency*,

1   520 U.S. 725, 736 n.10 (1997).

2        Plaintiffs allege that Chapter 6.22 "imposes unduly harsh economic impacts

3   on Plaintiffs' use of their properties" and purportedly deprives them of a

4   "reasonable market return on their investment [and] devalues their properties."

5   Compl. ¶ 98; *see also id*. ¶¶ 85–86.  The Complaint, however, is devoid of any

6   allegations that "compare[s] the value that has been taken from the property with

7   the value that remains in the property."  *Colony Cove Properties, LLC v. City of*

8   *Carson*, 888 F.3d 445, 450 (9th Cir. 2018).  This matters because if "an owner

9   possesses a full 'bundle' of property rights, the destruction of one 'strand' of the

10  bundle is not a taking, because the aggregate must be viewed in its entirety."  *Id*.;

11  *see also Moore v. City of Costa Mesa*, 886 F.2d 260, 263 (9th Cir. 1989) ("A

12  regulation that adversely affects property values does not constitute a taking unless

13  it destroys a major portion of the property's value.").  In other words, the "'mere

14  diminution in the value of property, however serious, is insufficient to demonstrate

15  a taking.'"  *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir.

16  2015) (affirming dismissal of takings claim alleging a 29% diminution in value).

17  Cursory allegations on loss of value like Plaintiffs' "do not raise a colorable Fifth

18  Amendment takings claim."  *Hotop*, 982 F.3d at 717 (affirming dismissal where

19  plaintiffs alleged they cannot raise their rents due to ordinance).[3]

20       Plaintiffs have also failed to plausibly allege that Chapter 6.22 interfered with

21  their investment-backed expectations.  While Plaintiffs claim that they "made their

22  business investments against the backdrop of a long-standing regulatory scheme

23  that permitted medium-term leases and the lease of furnished rental housing units,"

24  Compl. ¶ 98, this is insufficient as a matter of law.  "Simply put, when buying a

25

26  [3] *See also, e.g.*, *Killgore v. City of S. El Monte*, 2020 WL 4258584, at *6 (C.D. Cal. Apr. 24, 2020) (dismissing takings claim where complaint lacked any allegations that permit revocation "prevent[ed] other economically viable use of his real property"); *Lifschultz v. City of San Juan*

27  *Capistrano*, 2020 WL 2510650, at *3–4 (C.D. Cal. Mar. 9, 2020) (plaintiffs failed to "sufficiently

28  allege that Defendants' actions 'destroy[ed] a major portion' of the Property's value").

piece of property, one cannot reasonably expect that property to be free of government regulation such as zoning, tax assessments, or, as here," regulations on lease terms. *Rancho de Calistoga*, 800 F.3d at 1091; *see also Hotop*, 982 F.3d at 717. "Because [Plaintiffs] cannot reasonably expect that [their] property will be continually unencumbered by government regulation, this factor also favors the City." *Rancho de Calistoga*, 800 F.3d at 1090.[4]

Finally, the character of the government action weighs against finding a taking. This factor looks at whether the regulation "'amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Id*. As explained above, there is no physical invasion of Plaintiffs' property. Chapter 6.22 regulates only the use of the property and was adopted for the express purpose of "protecting existing housing stock" and "preserv[ing]" it "for use as long-term permanent housing," Ex. 1 (SMMC § 6.22.010)—purposes that promote the common good. *See Rancho de Calistoga*, 800 F.3d at 1090 (characterizing purpose of mobile home rent control ordinances as promoting common good). Plaintiffs' regulatory taking claim thus fails as a matter of law and should be dismissed.[5]

**D.     The City Did Not Violate Plaintiffs' Procedural Due Process Rights in Adopting Chapter 6.22**

Plaintiffs' seventh claim alleges the City violated the California and federal

---

[4] Nor can Plaintiffs claim investment-backed expectations arising out of prior agreements with the City. Plaintiffs concede that the City already confirmed that it would not enforce Chapter 6.22 as to two single-room occupancy ("SRO") units approved as part of a development agreement and "presume" the City's position is the same for the rental of certain furnished units authorized by a settlement agreement. Compl. ¶¶ 91–92. The City's administrative regulations—which inform the interpretation of Chapter 6.22, *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1035 (9th Cir. 2006)—also provide that SRO units are exempt and rental of furnished units is allowed if authorized pursuant to a prior settlement agreement. Ex. F at 96.

[5] Allegations that Chapter 6.22 "does not substantially advance legitimate state interests" are insufficient to state a takings claim. Compl. ¶ 101. "[T]he 'substantially advances' formula is not a valid takings test, and indeed [the Supreme Court] conclude[d] that it has no proper place in our takings jurisprudence." *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 548 (2005).

14

right to procedural due process by adopting Chapter 6.22 "without adequate notice and hearing" or a "deliberative process that sufficiently studied [Chapter 6.22] before it was adopted." Compl. ¶¶ 164, 166. But where, as here, the "'action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.'" *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003) ("*HMAO*"); *see San Francisco Tomorrow v. City and Cty. of San Francisco*, 229 Cal. App. 4th 498, 526 (2014) (same standard).

Plaintiffs complain that at the first reading on August 25, 2020, the City Council revised the ordinance so that a one-year minimum lease term was made mandatory rather than subject to an offer. Compl. ¶¶ 67–71, 164. But there is nothing that prohibits the City Council from making substantive edits to an ordinance when it is introduced at the first reading. Indeed, alterations after an ordinance has been introduced are expressly allowed by the City's Charter so long as any such altered ordinance is "finally adopted" "at a regular or adjourned regular meeting, held not less than five days after the date upon which such ordinance was so altered." Ex. N (Santa Monica City Charter § 615). As Plaintiffs' own allegations concede, the City Council adopted the altered ordinance two weeks later on September 8, 2020. Compl. ¶ 72. The City Council thus performed its responsibilities in the normal manner prescribed by law.

Because "the City Council exercised its legislative functions in a lawful manner, [Plaintiffs] received all the process that was due." *HMAO*, 344 F.3d at 970. "No additional individualized notice or hearing was required," *id*., and Plaintiffs' procedural due process claim therefore fails as a matter of law.

### E.   Plaintiffs Have Failed to Plausibly Allege Either an as Applied or Facial Impairment of Contracts Claim

"'Both the United States and California Constitutions contain provisions that prohibit the enactment of laws effecting a 'substantial impairment' of contracts.'"

*Alameda Cty. Deputy Sheriff's Ass'n v. Alameda Cty. Employees' Ret. Ass'n*, 9 Cal. 5th 1032, 1074 (2020). "But not all state regulation of contracts gives rise to a Contracts Clause claim." *LL Liquor, Inc. v. Montana*, 912 F.3d 533, 537 (9th Cir. 2018). The Clause is "narrowly" construed "to ensure that local governments retain the flexibility to exercise their police powers effectively." *Matsuda v. City and Cty. of Honolulu*, 512 F.3d 1148, 1152 (9th Cir. 2008). "The threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018); *see Alameda Cty.*, 9 Cal. 5th at 1075 (2020) (same). To answer that question, courts look to "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. Only if there is a substantial impairment does a court look to "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* Plaintiffs' claim does not advance past the threshold inquiry and should be dismissed.

Plaintiffs conclusorily allege that Chapter 6.22 both has and will "substantially impair" their "existing contractual relationships, including but not limited to: contracts governing the purchase or rental of furniture for furnished rental housing units; contracts to retain services that are commonly included with medium-term leases, including housekeeping, security, and landscaping services; loan agreements with financial institution regarding medium-term leases; and lease agreements with tenants." Compl. ¶ 128.[6] Plaintiffs allege no specific terms under any of these contracts that are purportedly undermined by Chapter 6.22. Faced with similar conclusory allegations, courts consistently dismiss impairment of contract claims. *E.g.*, *Hotop*, 982 F.3d at 717 (affirming dismissal where plaintiffs included

---

[6] Plaintiffs' allegation that Chapter 6.22 impairs their "contracts to retain services" and "agreements with financial institutions" are particularly curious, given that Chapter 6.22 neither forbids landlords from paying for services like "housekeeping, security, and landscaping" nor does it regulate financial arrangements between landlords and their banks.

"only vague allegation" of impairment and did "not specify how" the challenged ordinance affected the contracts); *Nguyen v. City of Buena Park*, 2020 WL 5991616, at *8 (C.D. Cal. Aug. 18, 2020) ("Conclusory allegations that there exist some contracts which have been impaired fall on the wrong side of the line demarcating 'possibility and plausibility of entitlement to relief.'"); *Vanguard Medical Management Billing, Inc. v. Baker*, 2018 WL 6137198, at *19 (C.D. Cal. Apr. 26, 2018) (dismissing claim "because [plaintiffs] fail to cite to the specific terms of any contract or contracts allegedly impaired").  Dismissal is necessary because without such allegations a court cannot consider whether "there was a 'contractual agreement regarding the specific ... terms allegedly at issue.'"  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).  It is simply not enough to allege, as Plaintiffs have done here, that a contractual relationship exists and is impaired.  Rather, "only state statutes that impair a specific (explicit or implicit) contractual provision [are subject to] constitutional scrutiny." *Id.* at 1151.  Otherwise, "all such measures" would be subject to "constitutional scrutiny, an approach the Supreme Court rejected more than half a century ago." *Id.*

Plaintiffs' claim fails for the additional reason that they "could not reasonably have expected the regulatory landscape to remain unchanged indefinitely," "given the 'existence of extensive regulation' of the landlord-tenant relationship." *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 576–77 (N.D. Cal. 2019); *see also Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411 (1983) ("In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past."); *Danekas v. S.F. Residential Rent Stabilization & Arb. Bd.*, 95 Cal. App. 4th 638, 651 (2001) (in "highly regulated industry" "further regulation can be reasonably anticipated").  That is especially true here, as Plaintiffs' own allegations make clear that the City Council had been publicly discussing new regulations governing medium-term rentals since at least September 2019.  Compl. ¶ 58.

Nor does Chapter 6.22 prevent Plaintiffs from safeguarding their existing contractual rights.  By its own terms, Chapter 6.22 does not apply to rental units that were occupied at the time of its effective date until "tenants using and occupying the rental housing unit vacate the unit."  Ex. 1 at 7 (SMMC § 6.22.100).

Plaintiffs fare no better with their facial claim under which they must show "that the law is unconstitutional in *all* of its applications."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (emphasis added).  As described above, Chapter 6.22's scope expressly limits any impact on existing contractual relationships.  Plaintiffs may not "go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases" to try and strike it down as facially invalid.  *Id*. at 449.

## F.    Plaintiffs' Remaining Facial Constitutional Challenges Fail

Plaintiffs' remaining constitutional claims all raise facial challenges.  "Such challenges are considered the most difficult to mount successfully."  *Willis v. City of Seattle*, 943 F.3d 882, 886 (9th Cir. 2019).  To prevail on these claims, Plaintiffs "must meet a high burden of proof: [they] must 'establish that no set of circumstances exists under which the [Ordinance] would be valid.  The fact that [the Ordinance] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'"  *S.D. Myers*, 253 F.3d at 467.  Even if Plaintiffs could overcome their lack of standing for several of their constitutional claims (and they cannot), Plaintiffs have failed to meet that high standard here, and each of their claims are subject to dismissal.

### 1.    Plaintiffs Cannot Establish That Chapter 6.22's Enforcement Provision Is Always Grossly Disproportional

A fine is excessive in violation of the Eighth Amendment and the California Constitution if its amount "'is grossly disproportional to the gravity of the defendant's offense.'"  *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020); *City and Cty. of San Francisco v. Sainez*, 77 Cal. App. 4th 1302, 1321

18

(2000) (same standard).  "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense."  *Pimentel*, 974 F.3d at 921.  But for "facial excessive fines claims" like Plaintiffs', the inquiry is focused on "whether parts of the penalty structure are always grossly disproportional, or if there are circumstances where the penalties would be valid."  *In re Toll Roads Litigation*, 2018 WL 4945314, at *2 (C.D. Cal. July 31, 2018).  As a matter of law, Plaintiffs have failed to plausibly allege that the enforcement provision of Chapter 6.22 is always grossly disproportionate.

Plaintiffs take issue that Section 6.22.140 authorizes a "fine not exceeding" $750 for infractions or $1,000 for misdemeanors or imprisonment of up to 6 months.  Compl. ¶¶ 141–44.  As an initial matter, civil and criminal fines at this level *and higher* relating to the use or activities at a residence are consistently upheld by courts.  *E.g.*, *Sainez*, 77 Cal. App. 4th at 1322–23 (minimum $1,000 daily fine for violating city's Housing Code was not excessive); *Discount Inn, Inc. v. City of Chicago*, 72 F. Supp. 3d 930, 935 (N.D. Ill. 2014) ("maximum fines of $1200 under the weed control ordinance" are not "grossly disproportionate to the offenses under all circumstances"); *People v. Braum*, 49 Cal. App. 5th 342, 359–62 (2020) ($6 million in civil fines against property owner who leased medical marijuana dispensaries not excessive).  Indeed, in upholding the $1,000 minimum fine in *Sainez*, the California Court of Appeal pointed to the City's "legitimate police power goal" of "preserving its housing stock."  Here, too, Chapter 6.22, including its enforcement provisions, was expressly adopted to preserve its "rental housing stock."  Ex. 1 at 4 (SMMC § 6.22.010).

Moreover, the criminal penalties are not *always* grossly disproportionate because Section 6.22.140 expressly authorizes criminal fines of a lower amount and

19

does not mandate imprisonment.  This defeats Plaintiffs' facial claim because the circumstances of a particular underlying offense can be considered.  *See Pimentel*, 974 F.3d at 923 ("if culpability is high or behavior reckless, the nature and extent of the underlying violation is more significant" and could justify a higher fine, and a lower fine may be warranted "if culpability is low, [and thus] the nature and extent of the violation is minimal").[7]

Finally, Plaintiffs misleadingly point to the possibility of up to $25,000 in administrative penalties under Section 1.10.110(a).  But Section 1.10.110 expressly reserves the highest level of penalties to circumstances that "present a substantial probability that death or serious physical harm" will result (Ex. O), and thus have no application to violations of Chapter 6.22.

### 2. Plaintiffs' Equal Protection and Substantive Due Process Claims Fail Because Chapter 6.22 Is Rationally Related to a Legitimate State Interest

Plaintiffs' equal protection and substantive due process claims are premised on their allegations that Chapter 6.22 is arbitrary and irrational and discriminates against landlords who do medium-term leases.  Compl. ¶¶ 151–54, 175–77. "Landlords are also not a protected class." *SFAA*, 881 F.3d at 1179.  Therefore, this Court reviews Plaintiffs' "claim that the Ordinance violates their right to equal protection under the rational basis standard." *Id.*  Under rational basis review, "'[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *Id.*; *see also RUI*, 371 F.3d at 1154 (same California standard).  Rational basis review likewise applies to Plaintiffs' substantive due process claim. *Nelson v.*

[7] Plaintiffs hypothesize that it would be unconstitutional if a landlord is subjected to the maximum penalty and imprisoned if a tenant simply failed to provide the primary residency documentation. Compl. ¶ 143.  There are, however, circumstances where imprisonment or the maximum fine may be appropriate.  For example, if a landlord knowingly and repeatedly violated Chapter 6.22 or actively seeks out tenants for short-term leases, that may justify the maximum penalties under those circumstances.  *See Pimentel*, 974 F.3d at 923 (whether the "violation erodes the government's purposes for proscribing the conduct" factors into excessive fines analysis).  The existence of such a scenario is reason alone to dismiss Plaintiffs' facial claim.

*City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989); *Nguyen*, 2020 WL 5991616, at *5 (same California standard).  A party "attacking the rationality of the legislative classification ha[s] the burden 'to negative every conceivable basis which might support it.'"  *F.C.C. v. Beach Commun., Inc.*, 508 U.S. 307, 315 (1993).  Plaintiffs cannot do that here. [8]

At the hearing on Chapter 6.22, the Council received public comment that furnished rentals are inimical to long-term affordable housing.  Ex. B at 32, 41, 46.  And in adopting Chapter 6.22, the City Council made the findings that "temporary housing, with lease terms of more than thirty days but less than a year, typically has a higher monthly price point than rental housing subject to annual leases, thereby increasing market pressure on rents," which, in turn, makes it "increasingly difficult for those who live and work in Santa Monica to find rental housing that is available, affordable, and meets their needs."  Ex. 1 at 3.  The City Council also found that "tenants are entitled to contractual relationships with landlords that offer some assurances of stability and minimize frequent displacements of tenants in a rental housing market affording tenants few and increasingly expensive options" and that "the City's rental housing stock should, to the extent possible, be preserved for use as long-term permanent housing."  *Id.*  These types of findings—premised on preserving rental housing stock and protecting tenants—are routinely held by courts to satisfy the rational basis test.  *E.g.*, *SFAA*, 881 F.3d at 1179 (commercial disclosure requirement is "rationally related to the City's legitimate interests in improving the bargaining position of tenants"); *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir. 1993) ("stated purposes of the ordinance were to alleviate hardship created by rapidly escalating rents [and] to equalize the

---

[8] Plaintiffs attempt to invoke strict scrutiny by alleging that Chapter 6.22 discriminates based on a tenant's race and infringes on tenants' privacy rights.  Compl. ¶¶ 153–55, 178–79.  But Plaintiffs lack standing to bring such claims, *see* Section IV.A., and thus rational basis review applies.  Moreover, as explained above, there is no privacy violation, and "infringe[ment] on [Plaintiffs'] tenant's privacy rights" cannot serve as a basis for their substantive due process claim because there is no harm to plaintiffs' own liberty or property interests."  *Hotop*, 982 F.3d at 718.

bargaining position of park owners and tenants" are "legitimate"); *Schnuck v. City of Santa Monica*, 935 F.2d 171, 176 (9th Cir. 1991) (Santa Monica's "Rent Control Law rationally serves the legitimate purpose of protecting tenants").  And as applied here, these findings are rationally related to Chapter 6.22's one-year minimum lease term, unfurnished rental, and primary residency requirements.

Plaintiffs, however, disagree with the City Council's policy decision and argue that its unfurnished rental and "primary residence and natural person requirements undercut the City's admitted need for diversity in housing options and for flexibility in lease terms of less than one year" and result in differences in treatment of landlords.  Compl. ¶¶ 151, 153, 175–77.  Plaintiffs have missed the point of rational basis review.  "'In the area of economic and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by the law are imperfect.'"  *Bowers v. Whitman*, 671 F.3d 905, 918 (9th Cir. 2012).  Even if "one might believe that the ordinance is an ineffective—and indeed draconian—means by which to effect its goals, '[h]ow well the ordinance serves [its] purpose[s] is a legislative question, one the court will not consider'" on rational basis review.  *Levald*, 998 F.2d at 690.

Nor can Plaintiffs prevail by alleging that the City Council's true motivation was to "promot[e] the interests of City's hotel lobby."  Compl. ¶ 71.  "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."  *Beach Commun.*, 508 U.S. at 315.  "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.*  Guided by these principles, the Ninth Circuit has rejected an equal protection claim premised on an allegation that the city council's "real reason[]" to support a living wage ordinance was to help hotel unionization.  *RUI*, 371 F.3d at 1155. Here, too, Chapter 6.22 readily survives rational basis review regardless of whether the City Council allegedly had other motivations for adopting the ordinance.

### 3.    Chapter 6.22 Is Not Impermissibly Vague in All of Its Applications

Plaintiffs' substantive due process claim also alleges that the definitions of the terms "primary residence" and "unfurnished rental housing unit" are unconstitutionally vague.  Compl. ¶¶ 180–82.  Where, as here, "a party [is] challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment [the plaintiff] must demonstrate that 'the enactment is impermissibly vague in all of its applications.'"  *HMAO*, 344 F.3d at 972; *see Garcia v. Four Points Sheraton LAX*, 188 Cal. App. 4th 364, 386 (2010) (same California standard).  This is an exacting standard.  "[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'"  *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001).  "A statute is vague not when it prohibits conduct according 'to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'"  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000).  Chapter 6.22 provides comprehensible standards of conduct, which is all that is required.  Facial invalidation—"strong medicine that has been employed by the Court sparingly and only as a last resort" even in the First Amendment context, *California Teachers*, 271 F.3d at 1150 (citation omitted)—is therefore unjustified as a matter of law.

Plaintiffs challenge the "primary residence" definition as unconstitutionally vague because hypothetical tenants—"a traveling nurse or a full-time student of Santa Monica College"—may "lack the documents enumerated in" the definition.  Compl. ¶ 181.  This is not a vagueness challenge—Plaintiffs comprehend the standard of conduct and what is proscribed.  Their disagreement with the policy decision on acceptable documentation does not make Chapter 6.22 unconstitutionally vague.  More fundamentally, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended

applications.'"  *Hill v. Colorado*, 530 U.S. 703, 733 (2000); *see also First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1275 (9th Cir. 2017) ("hypothetical examples concerning what the Ordinance covers and who might be punished under its provisions do not render the Ordinance unconstitutionally vague").

Plaintiffs' claim that the "unfurnished housing unit" definition is unconstitutionally vague is equally without merit.  According to Plaintiffs, the definition is "fatally flawed" because it is "unclear whether an apartment containing equipment or wiring for cable television, cable internet, or wireless internet" would be considered furnished.  Compl. ¶ 182.  Again, Plaintiffs' hypothetical examples are insufficient to state a claim for facial invalidity.  To pass constitutional muster, the definition of unfurnished housing unit need not "identify all the specific instances" in which a housing unit would be deemed unfurnished.  *California Teachers*, 271 F.3d at 1151.  This is especially so where the terms used, as here, are "words of common understanding."  *Id.*  There is no "unconstitutional guesswork" here because "in the vast majority of cases a given individual" can determine what an unfurnished housing unit means.  *Humanitarian L. Project v. U.S. Treas. Dept.*, 578 F.3d 1133, 1147 (9th Cir. 2009).  Plaintiffs' facial challenge therefore fails.

### 4.   Chapter 6.22's Bona Fide Residence Requirement Does Not Violate the Right to Travel

Plaintiffs' ninth claim for relief alleges that Chapter 6.22's requirement that the rental housing unit must be used and occupied as the tenant's primary residence violates a tenant's constitutional freedom of movement.  Compl. ¶¶ 190–91. This freedom, more commonly called the right to travel, prohibits States, unless strict scrutiny is satisfied, from "(1) preventing citizens from entering or leaving; (2) treating temporarily-present citizens of other states as 'unfriendly aliens' rather than as 'welcome visitors'; or (3) discriminating against citizens of other states who elect to become permanent residents."  *Matsuo v. U.S.*, 586 F.3d 1180, 1183 (9th Cir. 2009).  The Ninth Circuit, however, has not extended the constitutional right to

24

travel to bar restrictions relating to *intra*state travel.  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1997); *see also Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1173 (D. Or. 2018) ("[N]either the Supreme Court nor the Ninth Circuit has recognized a constitutional right to intrastate travel.").  Because Plaintiffs fail to allege that Chapter 6.22's primary residency requirement burdens *inter*state travel, Plaintiffs' claim fails for this reason alone.

Even if the right to travel were to apply to *intra*state restrictions, Plaintiffs' claim still fails because, at most, Chapter 6.22's primary residence requirement is nothing more than a permissible bona fide residency requirement.  As the Supreme Court has long held, such a requirement does "not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there."  *Martinez v. Bynum*, 461 U.S. 321, 328–29 (1983) (upholding bona fide residence requirement for enrollment in public school; internal footnote omitted).  By contrast, a residency requirement giving rise to a right to travel claim "classif[ies] residents according to the time they established residence" through "durational, fixed date, and fixed point residence requirements, which treat established residents differently based on the time they migrated into the State."  *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 904 n.3 (1986).  Applying this standard, the California Court of Appeal rejected a claim that an owner-occupancy requirement and restriction on the leasing of a condominium unit violated the right to travel.  *City of Oceanside v. McKenna*, 215 Cal. App. 3d 1420, 1432–33 (1989).  As a bona fide residency requirement, the restrictions did "not create impermissible infringements on the right to travel."  *Id.* at 1433.

Here, too, all Chapter 6.22 does is require the rental unit to be a tenant's primary residence.  There is no requirement that the tenant live in the City (let alone California) for a certain duration before they lease the unit.  Rather, a tenant need only intend to use the unit as the primary residence at the time of entering the lease and be able to establish the residency at a later point.  As a matter of law, this bona

fide residency requirement does not burden any right of travel.

### G. Plaintiffs Have Failed to Plausibly Allege That Chapter 6.22 Is Preempted by or Violates California Law

Because each of Plaintiffs' federal claims is subject to dismissal and the only basis on which the Court has subject matter jurisdiction is the existence of a federal question, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims asserting preemption by and violation of the California Coastal Act and certain California housing statutes. 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Lima v. U.S. Dept. of Educ.*, 947 F.3d 1122, 1128 (9th Cir. 2020) ("Because no federal claims remain, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over Plaintiff's state-law claim."); *Homeaway.com, Inc. v. City of Santa Monica*, 2018 WL 3013245, at *9 (C.D. Cal. June 14, 2018) (declining to exercise supplemental jurisdiction on Coastal Act claim and dismissing claim). Even if the Court were to entertain these claims (and it should not), they should be dismissed for failure to state a claim.

### 1. Chapter 6.22 Is a Valid Exercise of the City's Police Power, Consistent with State Law, and Thus Not Preempted

In claiming that Chapter 6.22 is preempted by the California Coastal Act and three California statutes regulating housing—the Mello Act, the Housing Accountability Act, the Housing Crisis Act of 2019—Plaintiffs have stretched preemption beyond its limit. "A conflict exists if the local legislation 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.'" *Sherwin-Williams Co. v. City of Los Angeles,* 4 Cal. 4th 893, 897 (1993) (internal citations omitted). Plaintiffs have failed to plausibly allege any actual conflict with California law. On the contrary, Chapter 6.22 falls well within the City's police power as granted by the California Constitution. *See* Cal. Const., art. XI, § 7.

Plaintiffs do not (and cannot) allege that Chapter 6.22 has entered a field that is expressly or impliedly fully occupied by state law. Preemption cannot be found

26

where, as here, state law "'expressed [its] intent to permit local regulation'" or "'the statutory scheme recognizes local regulations.'"  *Big Creek Lumber Co. v. Cty. of Santa Cruz*, 38 Cal. 4th 1139, 1157 (2006).  Each of the state laws on which Plaintiffs rely expressly contemplates local regulations.  The Coastal Act expressly preserves the constitutional police power of municipalities absent a clear conflict with the Coastal Act's explicit terms.  Cal. Pub. Res. Code § 30005(a).  Similarly, state law acknowledges the City's broad police power in matters of local planning and zoning, including the production and retention of housing.[9]  And the Mello Act and the Housing Crisis Act of 2019 expressly contemplate local regulations to further the preservation and production of affordable housing.[10]

Indeed, Chapter 6.22 is not only consistent with state law, it advances the stated intent and purpose of those laws by preserving the accessibility of affordable housing stock, providing some assurances of stability to tenants, and minimizing frequent tenant displacements.  Ex. 1 at 2, 4.  California has prioritized housing, including preservation of affordable housing stock and minimizing the displacement of tenants.[11]  Preservation and production of affordable housing is also a key component of coastal access.  *See* Cal. Pub. Res. Code §§ 30210; 30604 (f), (g).  The express purpose of Chapter 6.22 is to preserve the City's limited rental housing stock as permanent housing and encourage affordability by reducing

---

[9] *See, e.g.*, Cal. Gov't Code §§ 65800 ("counties and cities may exercise the maximum degree of control over local zoning matters"); 65581(c) ("each locality is best capable of determining what efforts are required by it to contribute to the attainment of the state housing goal," so long as determination is compatible with state law); *see also Big Creek Lumber Co.*, 38 Cal. 4th at 1151 ("'[w]e have recognized that a city's or county's power to control its own land use decisions derives from this inherent police power'") (fn omitted).

[10] *See* Cal. Gov't Code §§ 65590(i) ("No provision of [the Mello Act] shall be construed as increasing or decreasing the authority of a local government to enact ordinances or to take any other action to ensure the continued affordability of housing."); 66300(j) (local agencies may adopt regulations to, *inter alia*, "preserve and facilitate" "housing types that traditionally serve lower income households" or "units subject to any form of rent or price control").

[11] *E.g.*, Cal. Gov't Code §§ 65589.5(a)(1)(A) ("The lack of housing … is a critical problem that threatens the economic, environmental, and social quality of life in California"); 66300(d)(3) (local agencies may adopt ordinance, *inter alia*, requiring assistance to displaced tenants).

turnover and increased rents caused by shorter lease terms.  Ex. 1 at 4 (SMMC § 6.22.010).  Chapter 6.22 thus furthers, rather than impedes, access to affordable housing throughout the City, including in the Coastal Zone, in accordance with the purpose and intent of state law.  There is no preemption here.

**2.      Chapter 6.22 Does Not Violate the California Coastal Act Because It Is Not "Development" Requiring Coastal Commission Approval**

Plaintiffs' tenth claim also alleges that Chapter 6.22 violates the Coastal Act's procedural requirement that all "development" within the City's Coastal Zone be approved by the Coastal Commission.  Compl. ¶¶ 200–01.  This claim fails because Chapter 6.22 does not constitute a "development" for purposes of the Act.

Neither the text of the Coastal Act nor a single reported case in almost a half century of litigation over the scope of the Coastal Act suggests that a local law could itself be considered "development" for purposes of the Act.  On the contrary, the few cases to have touched on the issue indicate that a municipal ordinance cannot.  In *City of Dana Point v. California Coastal Comm'n*, 217 Cal. App. 4th 170 (2013), the California Court of Appeal concluded that the Commission had no jurisdiction to review a city ordinance, but that it could take actions against the actual development (*e.g.*, gates limiting beach access and implementation of time limits for beach access) authorized by the ordinance that were inconsistent with the Act and the City's LUP.  *Id.* at 188–90.  Throughout the opinion, the Court of Appeal carefully distinguished between "development mandated by the Nuisance Abatement Ordinance" (which was subject to Commission review) and the ordinance itself (which was not).  *See, e.g.*, *id.* at 181–182, 205–209.  Similarly, in a case challenging the City's home-share ordinance, the court refused to adopt a "broad interpretation of 'development'" in denying plaintiffs' preliminary injunction motion because such a definition "would include every possible change in law that could result in a change to land use" and does not overcome the "common sense definition and understanding of 'development.'"  *Homeaway.com*

*Inc., v. City of Santa Monica*, 2018 WL 1281772, at * 4 (C.D. Cal. Mar. 9, 2018). Here, too, Chapter 6.22 is not "development" that would require approval by the California Coastal Commission.  This claim therefore fails as a matter of law.

## H.    Plaintiffs' Derivative Declaratory Relief Claim Should Be Dismissed

Plaintiffs' twelfth claim seeks a declaration "concerning the constitutionality, legality, and validity" of Chapter 6.22.  Compl. ¶ 211.  "Because [Plaintiffs have] failed to state any substantive claims adequately, [their] declaratory relief claim fails."  *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1060 (C.D. Cal. 2015).  This Court should therefore dismiss Plaintiffs' declaratory relief claim.

## I.    The City Council Is Absolutely Immune from the Section 1983 and State Constitutional Claims

Plaintiffs have named the City Council as a defendant in each of their Section 1983 claims.  However, "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).  This immunity extends to legislative bodies.  *See, e.g.*, *Porto v. City of Laguna Beach*, 2012 WL 3810475, at *4 (C.D. Cal. Aug. 7, 2012) (city council is absolutely immune).  In determining whether legislative immunity applies, courts look to "'(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation.'"  *Schmidt v. Contra Costa Cty.*, 693 F.3d 1122, 1135 (9th Cir. 2012).  There can be no question here that the City Council's actions were legislative in nature, given that Chapter 6.22 was not ad hoc, applies to the public at large, and was formally adopted as an ordinance bearing the hallmarks of legislation.  If the Court does not dismiss the Section 1983 claims in their entirety, at a minimum, the City Council should be dismissed as a defendant.

Local legislators also "enjoy legislative immunity from [a plaintiff's] California Constitution claims under California law," which, like the Section 1983

analysis, looks at whether the challenged action is legislative in character and effect. *Schmidt*, 693 F.3d at 1135. For the same reasons as the Section 1983 claims, the City Council is immune from the state constitutional claims and, at a minimum, should be dismissed from those claims too.

## J.     Damages Are Not Recoverable on Plaintiffs' State-law Claims

California Government Code Section 818.2 provides that "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." The reason for this is because "'both constitutional and institutional understandings require that legislative acts, even if improper, find their judicial remedy in the undoing of the wrongful legislation, not in money damages awarded against the state.'" *Esparza v. Cty. of Los Angeles*, 224 Cal. App. 4th 452, 460–61 (2014). Thus, neither the City nor City Council may be sued for damages based on alleged state-law violations stemming from their adoption of Chapter 6.22, with the exception of a properly stated takings claim. *Hensler v. City of Glendale*, 8 Cal. 4th 1, 14 n.6 (1994). At a minimum, therefore, Plaintiffs' request for monetary damages should be dismissed for this reason and because damages are not recoverable for California constitutional claims (other than takings).[12]

## V.     CONCLUSION

Plaintiffs' complaint should be dismissed with prejudice.

DATED:  February 5, 2021               Respectfully submitted,

                                       By:_____*/s/ Kirsten R. Galler*_____
                                              Kirsten R. Galler

                                       *Attorneys for Defendants*
                                       CITY OF SANTA MONICA and
                                       CITY COUNCIL OF THE CITY
                                       OF SANTA MONICA

---

[12] Damages are not recoverable for violations of California constitutional provisions on privacy, *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 (1990), equal protection, *Javor v. Taggart,* 98 Cal. App. 4th 795, 807 (2002), due process, *Katzberg v. Regents of U. of California*, 29 Cal. 4th 300, 329 (2002), or impairment of contracts, *Aaron v. Aguirre*, 2006 WL 8455871, at *15 (S.D. Cal. Dec. 13, 2006).

30