GEORGE S. CARDONA (SBN 135439)
Interim City Attorney
george.cardona@smgov.net
KIRSTEN R. GALLER (SBN 227171)
Deputy City Attorney
kirsten.galler@smgov.net
HEIDI VON TONGELN (SBN 239331)
heidi.vontongeln@smgov.net
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336
Facsimile: (310) 395-6727

BERRY SILBERBERG STOKES PC
CAROL M. SILBERBERG (SBN 217658)
csilberberg@berrysilberberg.com
155 North Lake Avenue, Suite 800
Pasadena, CA 91101
Telephone: (213) 986-2688

Attorneys for Defendants
CITY OF SANTA MONICA and
CITY COUNCIL OF THE CITY
OF SANTA MONICA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NMS 1539, LLC, a Delaware limited liability company; NMS 1548, LLC, a Delaware limited liability company; 1520 7TH STREET, LLC, a California limited liability company; NMS15437, LLC, a California limited liability company; 1547 7TH STREET, LLC, a California limited liability company; 1557 7TH ST, LLC, a California limited liability company; 1650 LINCOLN NMS, LLC, a California limited liability company; NMS1550LINCOLN, LLC, a California limited liability company; NEBRASKA STUDIOS, LLC, a Delaware limited liability company; 3025 OB MULTIFAMILY LLC, a Delaware limited liability company; WSC 501 BROADWAY, LLC, a California limited liability company; WSC 601 COLORADO AVE, LLC, a California limited liability company; NMS 601 WILSHIRE, LLC, a California limited liability company; 1313 6TH STREET LLC, a Delaware limited liability company; WSC 1318 LINCOLN BLVD, LLC, a California limited | Case No.:   2:20-cv-11318-FLA-JPR  **DEFENDANTS CITY OF SANTA MONICA AND CITY COUNCIL OF THE CITY OF SANTA MONICA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**  [*Reply in Support of Motion to Abstain and Stay Action and Reply in Support of Request for Judicial Notice in Connection with Defendants' (1) Motion to Dismiss Plaintiffs' First Amended Complaint and (2) Motion to Abstain and Stay Action filed concurrently herewith*]  Hearing Date:   September 10, 2021 Hearing Time:   1:30 p.m.  Honorable Fernando L. Aenlle-Rocha |

liability company; 1323 5TH STREET, LLC, a California limited liability company; 1338 5TH STREET, LLC, a California limited liability company; NMS YALE, LLC, a California limited liability company; 14155NMS, LLC, a Delaware limited liability company; NMS1430LINCOLN, LLC, a California limited liability company; 14375 NMS, LLC, a California limited liability company; 1437 6TH STREET, LLC, a California limited liability company; LUXE 1441 LINCOLN, LLC, a California limited liability company; 14255NMS, LLC, a California limited liability company; 1445 9TH STREET, LLC, a Delaware limited liability company; 1446 YALE STREET, LLC, a Delaware limited liability company; 1516 STANFORD STREET, LLC, a Delaware limited liability company; 1038 10TH STREET, LLC, a Delaware limited liability company; 1007 LINCOLN BOULEVARD, LLC, a Delaware limited liability company; 1238 10TH STREET, LLC, a Delaware limited liability company; NMS 14277, LLC, a California limited liability company; 1433 EUCLID STREET, LLC, a Delaware limited liability company; and Trenton Armitage, an individual, on behalf of himself and all others similarly situated,

        Plaintiffs,

     v.

CITY OF SANTA MONICA, a municipal corporation; CITY COUNCIL OF THE CITY OF SANTA MONICA, its governing body, and DOES 1-10, inclusive,

        Defendants.

---

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT, Case No. 2:20-cv-11318-LFA-JPR

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................... 1

II.  ARGUMENT ............................................................................................ 2

A.  Only the One Landlord Charged with Price Gouging Has Standing to Bring the Retaliatory Prosecution Claim ........................... 2

B.  Landlords Fail to Demonstrate That Their Constitutional Claims Have Merit ...................................................................................... 2

1.  The Retaliatory Prosecution Claim Fails Because Municipal Liability and Lack of Probable Cause Are Not Plausibly Alleged ........................................................................ 2

2.  Landlords Do Not Plausibly Allege a Facial Takings Claim ................................................................................................ 4

3.  Landlords' Allegations Fall Short of Plausibly Alleging an as Applied or Facial Impairment of Contracts Claim ............. 7

C.  The Opposition Does Not Remedy the Failings of Armitage's Allegations .............................................................................................. 8

1.  Armitage Cannot Meet the High Burden of Alleging a Facial Privacy Claim ................................................................... 9

2.  Chapter 6.22 Does Not Impose a Durational Residence Requirement or Infringe Any Fundament Right to Travel ........ 12

D.  The Constitutional Claims Brought by Both Sets of Plaintiffs Fail .......................................................................................................... 14

1.  Plaintiffs' Equal Protection and Substantive Due Process Claims Fail Because Chapter 6.22 Is Rationally Related to a Legitimate State Interest ......................................................... 14

2.  Plaintiffs' Opposition Does Nothing to Establish That Chapter 6.22 Is Impermissibly Vague in All of Its Applications ................................................................................. 16

E.  Landlords' Remaining State-Law Claims Should Be Dismissed ........ 17

F.  The Derivative Section 1983 and Declaratory Relief Claims Should Be Dismissed ........................................................................... 18

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT,
Case No. 2:20-cv-11318-LFA-JPR

G.     The City Council Is Absolutely Immune from the Claims Challenging the Validity of Chapter 6.22 ............................................. 18

III.     CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aaron v. Aguirre*,
2007 WL 9777870 (S.D. Cal. June 12, 2007) ..................................................... 18

*Abshire v. Newsom,*
2021 WL 3418678 (E.D. Cal. Aug. 5, 2021) ...................................................... 12

*Andrews v. Hawaii Cnty.*,
2013 WL 5274369 (D. Haw. Sept. 17, 2013) ...................................................... 2

*Apt. Assn. of Greater Los Angeles v. City of Los Angeles*,
2021 WL 2460634 (C.D. Cal. June 1, 2021) ...................................................... 5

*Arteaga v. City of Oakley*,
2020 WL 511876 (N.D. Cal. Jan. 31, 2020) ...................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 1

*Attorney Gen. of N.Y. v. Soto-Lopez*,
476 U.S. 898 (1986) ..................................................................................... 14

*Barber v. State of Hawaii*,
42 F.3d 1185 (9th Cir. 1994) ......................................................................... 14

*Bledsoe v. Ferry Cnty.*,
2020 WL 376611 (E.D. Wash. Jan. 23, 2020) .................................................... 4

*Boardman v. Inslee*,
978 F.3d 1092 (9th Cir. 2020) ........................................................................ 16

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998) ...................................................................................... 18

*Cal. v. Hodari*,
499 U.S. 621 (1991) ..................................................................................... 12

*Chevron v. Lingle*,
544 U.S. 528 (2005) ...................................................................................... 6

*City of Dana Point v. California Coastal Comm'n*,
217 Cal. App. 4th 170 (2013) ........................................................................ 18

*Cole v. Housing Authority of City of Newport*,
435 F.2d 807 (1st Cir. 1970) ......................................................................... 13

*College Area Renters & Landlord Assn. v. City of San Diego*,
43 Cal. App. 4th 677 (1996) .......................................................................... 12

v

*Colony Cove Properties v. City of Carson*,
888 F.3d 445 (9th Cir. 2018)..................................................................5

*Cwynar v. City & Cnty. of San Francisco*,
90 Cal. App. 4th 637 (2001)..................................................................6

*Desai v. City of Los Angeles*,
602 Fed. Appx. 392 (9th Cir. 2015) .....................................................16

*Diamond v. U.S.*,
2015 WL 11215851 (C.D. Cal. May 15, 2015).....................................2

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
459 U.S. 400 (1983) ...........................................................................7, 8

*Ewing v. City of Carmel-By-The-Sea*,
234 Cal. App. 3d 1579 (1991) ...............................................................6

*F.C.C. v. Beach Communs.*,
508 U.S. 307 (1993) .........................................................................14, 15

*Fleck & Assoc., Inc. v. City of Phoenix*,
471 F.3d 1100 (9th Cir. 2006)...............................................................2

*Forbes v. Cnty. of San Diego*,
2021 WL 843175 (S.D. Cal. Mar. 4, 2021).........................................12

*Hammel v. Tri-Cnty Metro. Transp. Dist. of Oregon*,
955 F. Supp. 2d 1205 (D. Or. 2013).....................................................12

*Honeycutt v. City of Los Angeles*,
2020 WL 7786657 (C.D. Cal. Nov. 22, 2020).......................................3

*Hotel & Motel Ass'n of Oakland v. City of Oakland*,
344 F.3d 959 (9th Cir. 2003)...............................................................16

*Hotop v. City of San Jose*,
982 F.3d 710 (9th Cir. 2020).............................................................5, 9

*Humanitarian L. Project v. U.S. Treas. Dept.*,
578 F.3d 1133 (9th Cir. 2009)..............................................................16

*In re App. For Tel. Info. Needed for Crim Investig.*,
119 F. Supp. 3d 1011 (N.D. Cal. 2015)..................................................9

*In re Crawford*,
194 F.3d 954 (9th Cir. 1999)................................................................11

*Kilgore v. City of S. El Monte*,
2020 WL 4258584 (C.D. Cal. Apr. 24, 2020)........................................5

*Kracke v. City of Santa Barbara*,
63 Cal. App. 5th 1089, 278 Cal. Rptr. 3d 370 (2021)........................17

vi

*Lancaster v. City of Pleasanton*,
   2013 WL 1209498 (N.D. Cal. March 25, 2013) ...............................................11

*Landwehr v. Murrieta*,
   2006 WL 8442749 (C.D. Cal. Sept. 12, 2006)....................................................3

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008)..............................................................................15

*Martinez v. Bynum*,
   461 U.S. 321 (1983) ...........................................................................................13

*McCarthy v. Philadelphia Civil Service Commission*,
   424 U.S. 645 (1976) ...........................................................................................13

*Mem'l Hosp. v. Maricopa Cnty.*,
   415 U.S. 250 (1974) ...........................................................................................13

*Nguyen v. City of Buena Park*,
   2020 WL 5991616 (C.D. Cal. Aug. 18, 2020). ...............................................6, 7

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) .........................................................................................4

*Nunez by Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir. 1997)..............................................................................14

*Olson v. Bonta*,
   2021 WL 3474015 (C.D. Cal. July 16, 2021) ...................................................16

*Patel v. City of Los Angeles*,
   738 F.3d 1058 (9th Cir. 2013).............................................................................10

*Peruta v. Cnty. of San Diego*,
   678 F. Supp. 2d 1046 (S.D. Cal. 2010) ..............................................................13

*Peruta v. Cnty. of San Diego*,
   758 F. Supp. 2d 1106 (S.D. Cal. 2010) ..............................................................13

*Rancho de Calistoga v. City of Calistoga*,
   800 F.3d 1083 (9th Cir. 2015)........................................................................5, 6, 7

*Rosenblatt v. City of Santa Monica*,
   940 F.3d 439 (9th Cir. 2019)................................................................................6

*RUI One Corp. v. City of Berkeley*,
   371 F.3d 1137 (9th Cir. 2004)...............................................................................7

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
   253 F.3d 461 (9th Cir. 2001)................................................................................9

*Smith v. Maryland*,
   442 U.S. 735 (1979) .............................................................................................9

vii

*Strawn v. Morris, Polich & Purdy, LLP*,
  30 Cal. App. 5th 1087 (2019)..............................................................................10

*Tucson Women's Clinic v. Eden*,
  379 F.3d 531 (9th Cir. 2004).................................................................................11

*U. of Hawai'i Prof. Assembly v. Cayetano*,
  183 F.3d 1096 (9th Cir. 1999).................................................................................8

*U.S. Tr. Co. of New York v. New Jersey*,
  431 U.S. 1 (1977) ....................................................................................................8

*Walsh v. City & Cnty. of Honolulu*,
  423 F. Supp. 2d 1094 (D. Haw. 2006) ..................................................................15

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) .................................................................................................7

*Wilson v. Parker, Covert & Chidester*,
  28 Cal. 4th 811 (2002)..............................................................................................3

## STATUTES

42 U.S.C. § 1983.................................................................................................2, 18

Cal. Civ. Code § 1945..............................................................................................5

Cal. Gov. Code § 911.2 ..........................................................................................12

Cal. Gov. Code § 65589.5 .......................................................................................17

Cal. Gov. Code § 65900 ..........................................................................................17

Cal. Gov. Code § 66300 ..........................................................................................17

Cal. Pub. Res. Code § 30001.5 ...............................................................................17

## I.   INTRODUCTION

The 32 landlord Plaintiffs ("Landlords") and the single tenant Plaintiff Trenton Armitage ("Armitage") assert ten constitutional and state-law claims challenging the validity of Santa Monica Municipal Code ("SMMC") Chapter 6.22's residential leasing requirements along with a retaliatory prosecution claim challenging a pending criminal action against one of the 32 Landlords.  But as Defendants the City of Santa Monica and the City Council for the City of Santa Monica (collectively, "City") established in their Motion to Dismiss, Plaintiffs' facial claims do not plausibly allege that Chapter 6.22 is unconstitutional in all of its applications, let alone that it falls outside the City's traditional police powers. Nor have Landlords plausibly alleged municipal liability or that the City lacked probable cause, as required for their retaliatory prosecution claim.

Plaintiffs do not dispute that they have alleged facial claims and thus have a high burden to meet to establish Chapter 6.22's alleged unconstitutionality.  Unable to meet that burden, Plaintiffs misstate the relevant standards, failing to address the City's on-point authorities and instead relying on inapposite out-of-circuit authority.  As just one example, Armitage bases his right to travel claim on out-of-circuit authority despite the numerous decisions in this Circuit that have failed to recognize a fundamental right to intrastate travel.  That claim fails as a matter of law, as do each of Plaintiffs' other constitutional and state-law claims.

As a last-ditch effort to avoid dismissal, relying on decisions pre-dating *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiffs ask this Court not to entertain the City's legal challenges to their claims because motions to dismiss are purportedly disfavored.  *E.g.*, Dkt. 53 at 1.  But *Iqbal* and subsequent decisions make clear that this Court is under no obligation to accept as true allegations that are implausible, rest on erroneous legal conclusions, or are contrary to judicially noticeable facts.  This Court can and should dismiss Plaintiffs' claims at this time. And because Plaintiffs had the opportunity to amend already in the face of the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT,
Case No. 2:20-cv-11318-LFA-JPR

City's Motion to Dismiss the original complaint (Dkt. 22), yet were unable to fix the deficiencies in their claims, the dismissal should be with prejudice.

## II.   ARGUMENT

### A.   Only the One Landlord Charged with Price Gouging Has Standing to Bring the Retaliatory Prosecution Claim

Only one of the 32 Landlords has been criminally charged, and only that Landlord (1433 Euclid) has standing to bring a retaliatory prosecution claim. Relying on a single case brought by a husband and wife who claimed that Hawaii County retaliated against them both by filing criminal charges against the husband, *Andrews v. Hawaii Cnty.*, 2013 WL 5274369, at *3, 8 (D. Haw. Sept. 17, 2013), Landlords claim that each of the 32 Landlords has standing.  But *Andrews* cites no authorities supporting the notion that a party has standing to assert First Amendment claims vicariously and thus does not refute the City's cases.  Nor are there any allegations that the 32 Landlords have the sort of close relationship as exists between spouses, let alone allegations that 1433 Euclid is hindered in its "ability to protect[] [its] own interests'" as required to show third-party standing. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105 n.5 (9th Cir. 2006).

### B.   Landlords Fail to Demonstrate That Their Constitutional Claims Have Merit

#### 1.   The Retaliatory Prosecution Claim Fails Because Municipal Liability and Lack of Probable Cause Are Not Plausibly Alleged

Landlords do not refute a single one of the City's authorities establishing that their retaliatory prosecution claim lacks merit.

First, Landlords argue that their allegations that the City supposedly has a longstanding anti-affordable housing policy sufficiently alleges municipal liability for their retaliatory prosecution claim under 42 U.S.C. § 1983.  It does not.  As the City explained, "a plaintiff must allege widespread and routine unconstitutional/ unlawful conduct rather than merely 'isolated or accidental or sporadic' unlawful acts." *Diamond v. U.S.*, 2015 WL 11215851, at *7 (C.D. Cal. May 15, 2015) (internal quotation omitted).  Landlords have not done so here—there are no

2

allegations that the City has a widespread and routine practice of purportedly filing baseless criminal charges against those exercising their First Amendment rights. Alleging that the City has a supposed anti-housing policy untethered from a widespread unconstitutional practice does not meet this standard.

Second, *Landwehr v. Murrieta*, 2006 WL 8442749 (C.D. Cal. Sept. 12, 2006), on which Landlords rely, does not render sufficient their conclusory allegation that they are "informed and believed" that "City officials with final policy-making authority … urged and ratified the prosecuting attorney's retaliatory criminal prosecution and the basis for it." FAC ¶ 112. In *Landwehr*, plaintiff included detailed allegations that the second in command to the chief of police had final policy-making authority *and* told plaintiff that he "'was given a reduced overall rating on his evaluation as a result of [his] aforementioned protected speech activities.'" *Id.* at *2. Landlords have alleged nothing that comes close to the specific facts alleged in *Landwehr*. Rather, Landlords' allegations remain far more similar to the "scant and entirely conclusory allegations" of ratification that the court found insufficient in *Arteaga v. City of Oakley*, 2020 WL 511876, at *6 (N.D. Cal. Jan. 31, 2020). Landlords "must allege specific, plausible facts supporting the claim that a policymaker 'took affirmative steps to authorize or approve of'" the alleged unconstitutional conduct, *Honeycutt v. City of Los Angeles*, 2020 WL 7786657, at *5 (C.D. Cal. Nov. 22, 2020), which they have not done here.

Third, Landlords do not dispute—nor can they—that California law determines whether probable cause exists in a state court action and that the test is whether the cause of action is "*arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 824 (2002) (original emphasis). Instead, they baldly contend this Court cannot consider the state court's denial of the criminal defendants' demurrer and entirely ignore the state court's alternative holding rejecting their argument that the statute of limitations began to

3

run in December 2019.  Dkt. 52-1 (Ex. R at 246:15–19).  Landlords' out-of-circuit authorities do not overcome the relevant California decisions cited by the City that demonstrate that rulings on demurrer can be a basis for concluding that probable cause exists.  Dkt. 50 at 7.  And given the state court's ruling, Landlords cannot plausibly allege that the price-gouging claim is so completely lacking in merit that no reasonable attorney would have brought the claim.

Landlords' retaliatory prosecution should be dismissed with prejudice.[1]

## 2.      Landlords Do Not Plausibly Allege a Facial Takings Claim

Brushing aside the high standard Landlords must meet for their facial takings claim and the numerous decisions cited by the City dismissing such claims on the pleadings, Landlords rely on inapposite out-of-circuit cases and urge the Court to ignore their conclusory allegations, claiming regulatory takings analyses are "ad hoc, factual inquiries."  Dkt. 53 at 6.  There is no merit to Landlords' arguments.

On the economic impact factor, Landlords argue that there is no "automatic numerical barrier preventing compensation" in regulatory takings claims.  Dkt. 53 at 8–9.  But in so arguing, Landlords miss the mark.  The problem is that Landlords' facial takings claim is devoid of any allegations that "'compare the

---

[1] Relying on *Bledsoe v. Ferry Cnty.*, 2020 WL 376611 (E.D. Wash. Jan. 23, 2020), Landlords request "leave to amend to add facts about the frequency of [price-gouging] prosecutions."  Dkt. 53 at 26 n.16.  *Bledsoe*, however, misconstrues *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019), which concerned whether a plaintiff must prove probable cause for retaliatory *arrest*, not retaliatory *prosecution* claims.  Because "retaliatory arrest cases do not implicate the presumption of prosecutorial regularity" and officers can make warrantless arrests "often whenever officers have probable cause for 'even a very minor criminal offense,'" the Supreme Court "conclude[d] that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was *arrested* when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Id.* at 1724, 1727 (emphasis added).  Neither the Supreme Court nor any federal circuit has extended this limited exception to retaliatory prosecution claims.  And in any event, price gouging is not a minor criminal offense, or anything like the chalk-drawing charge at issue in *Bledsoe*.

4

value that has been taken from the property with the value that remains in the property.'" *Colony Cove Properties v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Landlords are not excused from alleging facts that plausibly show the extent of the economic impact just because this case is at the pleadings stage. *See, e.g.*, *Hotop v. City of San Jose*, 982 F.3d 710, 717 (9th Cir. 2020) (affirming dismissal of regulatory takings claim on pleadings);[2] *Kilgore v. City of S. El Monte*, 2020 WL 4258584, at *4 (C.D. Cal. Apr. 24, 2020) (applying comparison of value standard at pleadings stage); *Apt. Assn. of Greater Los Angeles v. City of Los Angeles*, 2021 WL 2460634, at *3 (C.D. Cal. June 1, 2021) (same). More is required now because, as a matter of law, the "destruction of one 'strand' of the bundle [of property rights] is not a taking." *Colony Cove*, 888 F.3d at 450. At most, Landlords' allegation that they have been deprived of an unspecified reasonable market return and devaluation of their property (FAC ¶ 198) shows no more than a "'mere diminution in the value,'" which "'is insufficient to demonstrate a takings'" and renders their claim subject to dismissal. *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir. 2015).

On the investment-backed expectations factor, Landlords concede that the landlord-tenant relationship is subject to extensive regulation, but contend that this factor is satisfied because a ban on initial leases of less than one year is purportedly unprecedented. But every single case Landlords cite for the supposed "right to create medium-term leases" concerns month-to-month tenancies (Dkt. 53 at 7), and none of those cases even suggests that a regulation requiring an initial fixed term is improper. In any event, after the initial lease term, Chapter 6.22 does not prevent month-to-month tenancies, consistent with Civil Code § 1945. Nor are Landlords

---

[2] The City's reliance on *Hotop* does not show that it is "litigating a different case than what the FAC alleges." Dkt. 53 at 6. *Hotop* is on point and instructive—a group of landlords, like here, asserted takings, equal protection, due process, and privacy claims challenging a city ordinance governing rental units, and the Ninth Circuit affirmed dismissal of the claims on the pleadings.

correct that "similar ordinances have been struck down." Dkt. 53 at 8. The three cases Landlords cite concern short-term rentals (*i.e.*, those less than 31 days, which are not subject to Chapter 6.22), and numerous other cases have upheld short-term rental bans against various constitutional challenges.[3] At bottom, Landlords cannot dispute that "[t]he Supreme Court 'has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.'" *Rancho de Calistoga*, 800 F. 3d at 1090. Against this backdrop of extensive regulation, Landlords cannot plausibly allege that Chapter 6.22 interferes with their investment-backed expectations.

Finally, as to the character of the government action, Landlords claim that Chapter 6.22 is tantamount to a *per se* taking because they cannot lease for less than one year. Not surprisingly, Landlords do not cite a single case in the landlord-tenant context that supports their characterization of lease regulations as being akin to physical invasion of property, and instead rely on a District of Maryland case concerning trade secrets that bears no relationship to the facts here. Landlords also argue that Chapter 6.22 does not "promote the public good" because it purportedly does not "*substantially advance* a legitimate state interest." Dkt. 53 at 10 (quoting *Cwynar v. City & Cnty. of San Francisco*, 90 Cal. App. 4th 637, 659 (2001), original emphasis). But as the City already explained, the Supreme Court invalidated the substantially advances standard over 15 years ago. Dkt. 50 at 11 n. 6 (citing *Chevron v. Lingle*, 544 U.S. 528, 545 (2005)). Moreover, there is absolutely no basis for Landlords' argument that Chapter 6.22—with its express purpose of preserving housing stock "for use as long-term permanent housing" and

---

[3] *E.g.*, *Ewing v. City of Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1592, 1598 (1991) (rejecting takings challenge to short-term rental ban; "ordinance does not constitute a taking simply because it narrows a property owner's options"); *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 453 (9th Cir. 2019); *Nguyen v. City of Buena Park*, 2020 WL 5991616, at *5–10 (C.D. Cal. Aug. 18, 2020).

6

"minimiz[ing] frequent displacements of tenants in a rental housing market" (Dkt. 45-1 at 4)—does not promote the common good because it is not a "true rent-control ordinance" (Dkt. 53 at 10), whatever that may be.  The focus here is whether the regulation "affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good," *Rancho de Calistoga*, 800 F.3d at 1090, which Chapter 6.22 unquestionably does.

### 3. Landlords' Allegations Fall Short of Plausibly Alleging an as Applied or Facial Impairment of Contracts Claim

Landlords' facial and as applied impairment of contracts claim rests on their conclusory allegation that Chapter 6.22 has and will substantially impair their contractual relationships for a variety of services.  FAC ¶¶ 209–10.  As the City established (Dkt. 50 at 12–13), such conclusory allegations fall well short of Plaintiffs' obligation to plausibly allege the existence of a "'contractual agreement regarding the *specific* ... terms allegedly at issue,'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (emphasis added), let alone that Chapter 6.22 is "unconstitutional in all of its applications," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008).

Landlords try to sidestep this requirement by arguing that they have alleged "entire contracts" "have been effectively destroyed."  Dkt. 53 at 27.  But Landlords cite no cases establishing that such an allegation on its own—without identifying any specific contractual provisions—is sufficient.  The one case Landlords cite merely stands for the proposition that a party bringing an impairment claim need only establish *substantial* impairment, not total destruction.  *See Energy Reserves Group, Inc. v. Kansas Power & Light Co*., 459 U.S. 400, 411 (1983)).  Despite Landlords' contrary arguments, their allegations are the very sort of "[c]onclusory allegations that there exist some contracts which have been impaired" that courts have found to "fall on the wrong side of the line demarcating "possibility and plausibility of entitlement to relief." *Nguyen*, 2020 WL 5991616, at *8.

Landlords also misstate the standard in arguing that courts look to "whether a *particular issue* was regulated." Dkt. 53 at 28. The correct standard—as cited in the City's Motion—is "whether the *industry* the complaining party has entered has been regulated in the past." *Energy Reserves*, 459 U.S. at 411 (emphasis added). And, in *Energy Reserves*, the Court found it "[s]ignificant" that the "parties are operating in a heavily regulated industry," even though, prior to passing the legislation at issue, "Kansas did not regulate natural gas prices specifically." *Id.* at 413–14. Here, too, it does not matter whether the City previously regulated medium-term leases, given that it is indisputable that the relevant industry here— the landlord-tenant relationship—is subject to extensive regulation.

Finally, even if Landlords' allegations advanced past the threshold inquiry (and they do not), Landlords incorrectly argue that an impairment exists if an "evident and more moderate course" was available. Dkt. 53 at 27. But the case on which Landlords rely involved a situation where state legislation was "self-serving and impair[ed] the obligations of its *own* contracts," in which circumstances courts are "less deferential to a state's judgment of reasonableness and necessity." *U. of Hawai'i Prof. Assembly v. Cayetano*, 183 F.3d 1096, 1107 (9th Cir. 1999) (emphasis added).[4] Where, as here, "the State itself" is not "a contracting party," "'courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.'" *Energy Reserves*, 459 U.S. at 413. Thus, whether an evident and moderate alternative exists is immaterial.

**C.      The Opposition Does Not Remedy the Failings of Armitage's Allegations**

Armitage complains in a footnote that the City is "splitting hairs" about his failure to allege facts to establish standing, and generally concedes he has not alleged whether he is even subject to a lease entered under Chapter 6.22. Dkt. 53 at

---

[4] The "evident and more moderate course" language comes from a case challenging a law that impaired a states' own contracts, and confirms it does not apply here. *See U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 31 (1977).

15 n.7.  This footnote only raises further questions as to his standing, because it is unclear why he could not easily allege facts clearly demonstrating his standing if, in fact, he had such standing.[5]  In any event, Landlords' arguments as to the merits fail to address the insufficiencies identified by the City.

### 1. Armitage Cannot Meet the High Burden of Alleging a Facial Privacy Claim

Armitage's Opposition fails to establish any fundamental right to privacy under the Constitution or California state law or even address that, as a facial challenge, Armitage must "'establish that no set of circumstances exists under which the [Chapter 6.22] would be valid.'"  *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001).  Although Armitage attempts to create a reasonable expectation of privacy by distinguishing certain cases discussing a landlord's disclosure of financial information, he does not and cannot dispute that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979), and, particularly, that such information is "already disclosed to the City in other contexts," *Hotop*, 982 F.3d at 715–16.  Therefore, Armitage tries to claim that such disclosures are not voluntary here, relying on *In re App. For Tel. Info. Needed for Crim Investig.*, 119 F. Supp. 3d 1011, 1029–31 (N.D. Cal. 2015).  Such reliance is misplaced because, there, the passive generation of cell phone location pings was not voluntary.  But, here, tenants knowingly, regularly, and voluntarily provide similar information to the City and even their landlords.  Dkt. 50 at 17–18.  Armitage does not deny that tenants provide such information.  Rather, he simply asks the Court to ignore such regular and voluntary disclosures because in those cases such information was provided to receive certain services.  Dkt. 53 at 17.  This purported distinction is irrelevant and without authority.  The question is not

---

[5] Armitage cannot assert alleged constitutional deprivations that are not his—thus his references to students or undocumented residents are irrelevant.  Dkt. 50 at 23.

*why* tenants provide the information, but rather *do* tenants voluntarily give information to the City.  The answer is indisputably yes.

In fact, the Court need look no further than its own records to see this is true. Armitage provided very similar information to the City.  In his claim for damages, Armitage identified his name, address, birthdate, and driver's license number. Dkt. 36-2.  He again voluntarily disclosed such information by filing the same document with the Court publicly.  *Id.*  Thus, his claim that such information is not voluntarily disclosed to the City or is overly sensitive is disingenuous at best.  Moreover, it is implausible that a landlord does not know a tenant's name and address; and it is common for landlords to collect driver's license information, and even credit information.  In fact, people provide their driver's licenses to strangers all the time—whether to purchase alcohol, rent a hotel room, or use a credit card.  Thus, Armitage is analogous to the guest who provides records to a hotel, or a customer providing information to a bank.  *See, e.g.*, *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013) (guests lack privacy interest in their own hotel records).

Furthermore, while Armitage claims that any invasion was serious even though he publicly disclosed such information, he does not address a single cited case in the City's Motion.  Rather, he asks this Court to delay ruling, relying on a California state court case, which employs a different pleadings standard, and found that there was a question of fact as to whether a California tax-return privilege outweighed an insurer's need for such information and a comparison of whether such information had been otherwise disclosed.  *Strawn v. Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1099–1100 (2019).  Here, of course, there is no forced disclosure of a tax return.  Such documentation is only one of many a tenant may choose to produce to demonstrate primary residence.  Moreover, nothing in Chapter 6.22 prevents redaction of financial information.

Knowing he cannot establish a facial privacy claim, Armitage seeks to rely upon the nebulous doctrine of informational privacy, citing *Tucson Women's Clinic*

10

*v. Eden*, 379 F.3d 531 (9th Cir. 2004). Armitage's reliance on *Eden* fails to advance his claim. Although the Ninth Circuit has recognized a limited right to informational privacy for sensitive information (like medical information in *Eden*), Armitage cites no case remotely suggesting that such a right would extend to basic name and address information, which is qualitatively different than medical information. In fact, various courts have found driver's license and related information does not qualify. *See, e.g.*, *Lancaster v. City of Pleasanton*, 2013 WL 1209498, *4 (N.D. Cal. March 25, 2013) (Ninth Circuit "has limited informational privacy rights to those that bear on the release of information concerning 'marriage, procreation, contraception, family relationships, and child rearing and education.'").

Moreover, while the City has demonstrated the need to confirm residency (SMMC § 6.22.010), Armitage relies on the fact that the City might appoint a designee to collect such information, which might result in a harmful disclosure of such information. Dkt. 53 at 16. But the Ninth Circuit has rejected theories of speculative harmful disclosure of information. In *In re Crawford*, 194 F.3d 954 (9th Cir. 1999), the Ninth Circuit found no violation of informational privacy for the filing of social security numbers in court records. The court noted that risk of harm for identity theft was speculative and found that "unlike [other] personal facts, a SSN is not inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment or stigma." *Id.* at 960. The same speculation is what underlies Armitage's claims here, where there is no public disclosure contemplated. Rather, Armitage merely has to provide two documents to his landlord (assuming he has not already). And again, a tenant can redact sensitive information as well. Nor does this speculation defeat Armitage's burden on a facial claim or the City's legitimate interest in verifying primary residence to secure housing at reasonable prices.[6]

---

[6] As for Armitage's state-law claim, he does not directly address the California

11

**2.  Chapter 6.22 Does Not Impose a Durational Residence Requirement or Infringe Any Fundament Right to Travel**

Armitage does not argue that the U.S. Supreme Court or the Ninth Circuit has recognized intrastate travel as a fundamental right.  Instead, he simply points out that *other* circuits have done so (Dkt. 53 at 10–11), which has no bearing on whether courts in this Circuit recognize such a right.  Nor does he address the numerous cases in this Circuit that have refused to expand the constitutional liberty interest to include a right to intrastate travel.[7]  Regardless of the claimed status of intrastate travel rights elsewhere, it is not a fundamental right here.

Even assuming arguendo that a fundamental right to intrastate travel exists, such a right is not implicated in this case.  Armitage ignores the City's authorities demonstrating that Chapter 6.22 does not burden any right to travel.  Dkt. 50. at 20–22.  Rather, he spends a great deal of time discussing durational restrictions, which are irrelevant here.  While he correctly explains that the Supreme Court distinguishes between "durational" restrictions and "bona fide" requirements, he falsely implies that Chapter 6.22 imposes a type of durational restriction—it does

standard for a privacy claim or the cases the City cited, which are fatal to his claim. And the primary California case he relies on did "not reach the constitutional privacy challenge" and thus is simply dicta. *College Area Renters & Landlord Assn. v. City of San Diego*, 43 Cal. App. 4th 677, 691 (1996).  Also, *Cal. v. Hodari*, 499 U.S. 621, 646 n.2 (1991), lends no support to Armitage, as the portion he quotes is from a footnote in the dissent, quoting another dissent.  In addition, while Armitage asserts he substantially complied with the California Torts Claim Act, he did not allege as much, and his claim was filed May 14, 2021. Dkt 36-2.  However, Armitage actually alleges that he "entered into a lease agreement to use or occupy a rental housing unit in the City of Santa Monica *since September 8, 2020*." FAC ¶ 117.  Filing a claim form on May 14, 2021 is more than six months after September 8, 2020, and such claim would be untimely. *See* Cal. Gov. Code § 911.2

[7] *E.g.*, *Abshire v. Newsom,* 2021 WL 3418678, at *5 (E.D. Cal. Aug. 5, 2021) (intrastate travel not a fundamental right); *Forbes v. Cnty. of San Diego*, 2021 WL 843175, at *7 (S.D. Cal. Mar. 4, 2021) (no likelihood of success; right to intrastate travel not recognized by the Supreme Court or Ninth Circuit); *Hammel v. Tri-Cnty Metro. Transp. Dist. of Oregon*, 955 F. Supp. 2d 1205, 1210 (D. Or. 2013).

not.  Durational residence requirements treat established residents differently based on the time they migrated into the state, and often require a person to establish residency for some period of time before they are entitled to receive some fundamental benefit.  *See Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 255 (1974).  Armitage's cited cases are examples of such durational requirements.  *See, e.g.*, *Cole v. Housing Authority of City of Newport*, 435 F.2d 807, 808 (1st Cir. 1970) (requiring person to be a resident for two years before receiving public housing). [8]  By contrast, a "bona fide residence requirement simply requires that the person *does* establish residence before demanding the services that are restricted to residents." *Martinez v. Bynum*, 461 U.S. 321, 328–29 (1983) (original emphasis).

Chapter 6.22 neither requires residency before entering a lease nor impacts the right to receive a fundamental benefit (e.g., low-income housing or free healthcare).  Rather, Chapter 6.22 merely requires that a tenant entering a lease for a term of one year have a present intent to establish a primary residence in Santa Monica and later provide evidence of such residency.  Tenants are not prevented from moving, traveling, or receiving any public rights or benefits based on the time they must become a resident before entering a lease.  Thus, it does nothing to penalize "Santa Monicans" from leaving the state or moving within the state and is merely a bona fide residency requirement.  *See, e.g.*, *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 647 (1976) (upholding continuing

_____

[8] Armitage cites *Peruta v. Cnty. of San Diego*, 678 F. Supp. 2d 1046, 1060 (S.D. Cal. 2010), which addressed San Diego County's failure to issue a concealed gun license to plaintiff who claimed he was a "full-time resident."  The court allowed the right to travel claim to proceed, but ultimately dismissed the same claim on summary judgment.  *Peruta v. Cnty. of San Diego*, 758 F. Supp. 2d 1106, 1120 (S.D. Cal. 2010), *aff'd* 824 F.3d 919 (9th Cir. 2016).  While *Peruta* is not binding (and has not been followed in this context), here, there is no "full-time" residency requirement or any restriction on a tenant leaving Santa Monica or the State.  A tenant merely has to establish a primary residence.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT,
Case No. 2:20-cv-11318-LFA-JPR

residency requirement to remain a firefighter).[9]

## D.   The Constitutional Claims Brought by Both Sets of Plaintiffs Fail

### 1.   Plaintiffs' Equal Protection and Substantive Due Process Claims Fail Because Chapter 6.22 Is Rationally Related to a Legitimate State Interest

As set forth in the City's Motion and *supra*, Chapter 6.22 does not infringe any fundamental right, and Plaintiffs do not even try to claim that they are members of a protected class.  Thus, rational basis applies to their equal protection and due process claims.  Knowing Chapter 6.22 readily satisfies the rational basis test, Plaintiffs seek to impose a higher standard.  For example, they claim that potential changing of rationales would make Chapter 6.22 arbitrary.  However, such hypotheticals misapply the standard, where Plaintiffs must "negative every conceivable basis which might support it." *F.C.C. v. Beach Communs.*, 508 U.S. 307, 315 (1993) ("[A] legislative choice … may be based on rational speculation unsupported by evidence or empirical data.").  Plaintiffs have not done so here.

Plaintiffs also seek to avoid dismissal by claiming the Court should delve into the City's motivations to determine whether a rational basis exists or animus undermined the City's intent.  But their assertions are unfounded and contrary to

---

[9] Armitage asserts that Chapter 6.22 does not meet strict scrutiny, intermediate scrutiny, or the rational basis test.  Dkt. 53 at 13, 18.  Because there is no fundamental right to intrastate travel or sufficient allegations that any such right has been infringed, at most, the rational basis test applies.  While Armitage relies heavily on *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1997)—which declined to resolve whether there is a constitutional right to intrastate travel—Chapter 6.22 does not involve an anti-"cruising" ordinance, does not deter travel, and does not use any classification to penalize the exercise of any such right, *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 905 (1986), much less effect a genuinely significant deprivation of any such right, *Barber v. State of Hawaii*, 42 F.3d 1185, 1197 (9th Cir. 1994).  As set forth in the City's Motion and *infra*, the rational basis test applies to Armitage's privacy claims and Plaintiffs' equal protection and due process claims as well, and Chapter 6.22 easily satisfies the rational basis test.  Dkt. 50 at 22–25.  As such, there is no need to address Plaintiffs' inapplicable arguments on strict and immediate scrutiny.

14

the authority cited by the City.  First, *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008), simply does not apply to the facts here.  *Lazy Y Ranch* found that the classification (*e.g.*, how classes of people are treated differently) was disputed and not subject to the rational basis test.  Here, however, there is no such dispute. While Plaintiffs' theories have changed, Plaintiffs argue that Chapter 6.22 creates a classification subject to equal protection analysis between: (a) tenants of medium-term leases, and (b) long-term tenants.  Dkt. 53 at 18–20.  The relevant inquiry, however, is whether there is a rational basis for this classification, which there is. *See Lazy Y Ranch*, 546 F.3d at 589 ("rational basis review should not inquire into the actual purpose of the challenged classification").[10]

Second, pretextual legislative motivations are irrelevant here, and Plaintiffs' reliance on *Walsh v. City & Cnty. of Honolulu*, 423 F. Supp. 2d 1094 (D. Haw. 2006), is unfounded.  The Supreme Court has clearly stated that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Communs.*, 508 U.S. at 315.  Since *Walsh*, the Ninth Circuit has held that "where affected parties are not members of 'a traditionally suspect class' (*i.e.*, classes defined by race or national origin), we 'may strike down' a challenged law on the basis of animus only 'if the statute serves no legitimate governmental purpose *and* if impermissible animus toward an unpopular group prompted the statute's enactment.'" *Boardman*

---

[10] Plaintiffs again argue that owners and renters are treated differently, but fail to explain how.  This is not surprising because Chapter 6.22 applies the same to a homeowner as it would apply to a tenant.  Plaintiffs seemingly abandoned assertions that medium-term landlords are treated differently (because they are not a protected class) and now claims that medium-term tenants and long-term tenants are not treated equally; although they do not explain how.  Dkt. 53 at 18–20. However, even assuming there is differential treatment, such distinction is still subject to a rational basis test and the City can rationally distinguish between tenants who sign a lease for greater than one year, because such rental units were not at issue in Chapter 6.22 or a concern for the City.  (SMMC § 6.22.010.)

15

*v. Inslee*, 978 F.3d 1092, 1119 (9th Cir. 2020) (emphasis in original).  Here, Chapter 6.22 serves a legitimate government purpose (Dkt. 50 at 24), and Plaintiffs have not alleged any animus towards any unpopular group.  Plaintiffs just disagree with the City's policy.  *See Olson v. Bonta*, 2021 WL 3474015, at *2 (C.D. Cal. July 16, 2021) (dismissing equal protection claim and rejecting animus argument). Although Plaintiffs claim that inhibiting immigration as a goal is constitutionally impermissible, Chapter 6.22 does not inhibit people from moving to Santa Monica. All tenants (whether previously Santa Monica residents or not), must abide by Chapter 6.22 when they enter a new lease that is subject to that provision.

For all these reasons, the equal protection and due process claims fail.

### 2.    Plaintiffs' Opposition Does Nothing to Establish That Chapter 6.22 Is Impermissibly Vague in All of Its Applications

Plaintiffs cannot demonstrate that the terms "primary residence" and "unfurnished housing unit" are "impermissibly vague in all of [their] applications," as required to show the facial invalidity of an ordinance.  *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003); Dkt. 50 at 26.

The Ninth Circuit has held that "primary residence" is not unconstitutionally vague.  *See Desai v. City of Los Angeles*, 602 Fed. Appx. 392, 394 (9th Cir. 2015) ("Plaintiff's vagueness challenge to the Ordinance's use of the term 'primary residence' fails because persons of common intelligence do not have to guess at the meaning of 'primary residence.'").  The same analysis applies for the term "unfurnished housing unit."  In fact, Plaintiffs allege that Chapter 6.22 impairs contracts with vendors who provide "furniture for furnished rental housing units." FAC ¶ 209.  Although Plaintiffs speculate as to whether cable wires are "furnishings," the vast majority of people, including Plaintiffs, can distinguish an unfurnished housing unit from a furnished one.  *See Humanitarian L. Project v. U.S. Treas. Dept.*, 578 F.3d 1133, 1147 (9th Cir. 2009).  Simply put, Plaintiffs' hypotheticals do not make Chapter 6.22 unconstitutionally vague.

16

**E.        Landlords' Remaining State-Law Claims Should Be Dismissed**

Landlords offer no reason why this Court should retain supplemental jurisdiction of their state-law claims if the federal claims are dismissed.  In any event, Landlords have failed to refute the City's showing that their state-law claims lack merit.  Landlords concede, as they must, that "local regulation is permitted" (Dkt. 53 at 28), but attempt to save their preemption claim by arguing Chapter 6.22 nonetheless conflicts with state law.  Dkt. 53 at 28.  No such conflict exists.  Chapter 6.22 promotes affordability and protection of permanent rental housing stock, and does not, as Landlords argue, rezone parcels to a "less intensive use", "impede[] the ability of persons of medium to lower income to live in the Coastal Zone", or inhibit "access to and along the coast". [11]  There is no preemption here.

Landlords' erroneous assertion that the *adoption* of Chapter 6.22—and nothing more—constitutes "development" necessitating Coastal Commission approval fares no better.  Dkt. 53 at 29.  Landlords solely rely on *Kracke v. City of Santa Barbara*, 63 Cal. App. 5th 1089, 278 Cal. Rptr. 3d 370, 375 (2021), for this point, but *Kracke* held that the city's enforcement efforts were "development" because the number of short-term rentals within the Coastal Zone was reduced from 114 to six.  There are no similar allegations here.  *Kracke* simply does not support Landlords' argument that the adoption of an ordinance on its own constitutes "development."  The distinction between adoption of an ordinance (not development) and enforcement actions taken in furtherance of an adopted ordinance

---

[11] *See* Cal. Gov. Code § 66300(b)(1)(A) (defining "less intensive use" for purposes of the Housing Crisis Act as a range of development standards, not leasing or tenancy requirements, that would "lessen the intensity of housing"); Cal. Gov. Code § 65900 (Mello Act's limited application to replacing and producing income restricted affordable housing units within the Coastal Zone); Cal. Pub. Res. Code § 30001.5(b) (Coastal Act goal to "[a]ssure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state"); Cal. Gov. Code § 65589.5 (Housing Accountability Act's limitations on denial or reduction of certain housing projects).

17

(development) was recognized by *City of Dana Point v. California Coastal Comm'n*, 217 Cal. App. 4th 170, 188–90 (2013)—a decision (and a distinction) that Landlords ignore entirely.  This Court should not stretch the definition of "development" as far as Landlords suggest and should instead dismiss this claim.

**F.   The Derivative Section 1983 and Declaratory Relief Claims Should Be Dismissed**

Plaintiffs do not dispute that their derivative Section 1983 and declaratory relief claims should be dismissed if the underlying substantive claims fail.  Thus, as explained in the City's Motion, these claims should be dismissed. Dkt. 50 at 29–30.

**G.   The City Council Is Absolutely Immune from the Claims Challenging the Validity of Chapter 6.22**

Landlords do not and cannot dispute that legislators are entitled to absolute immunity for their legislative decisions.  Nor do they dispute the factors to determine whether absolute immunity applies to Section 1983 and California constitutional claims.  Instead, Landlords cite a single unpublished decision holding that it could not resolve on the pleadings whether the City of San Diego's actions involving alleged underfunding of a municipal pension system were legislative in nature.  *Aaron v. Aguirre*, 2007 WL 9777870, at *1, 4–5 (S.D. Cal. June 12, 2007). But, here, Landlords are challenging the validity of a formally adopted ordinance, which unquestionably bears all the hallmarks of legislation.  *See* Dkt. 50 at 30. Landlords contend that Chapter 6.22 is not the product of "legitimate" legislative activity, but their policy disagreements do not make Chapter 6.22 any less legislative in character.  *E.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.").  Moreover, Landlords' reference to retaliatory prosecution is entirely beside the point because the City seeks to dismiss the Council as immune only from the claims challenging Chapter 6.22.

### III.   CONCLUSION

Plaintiffs' FAC should be dismissed with prejudice.

DATED:  August 20, 2021

Respectfully submitted,

By:_____ */s/ Kirsten R. Galler*_____
              Kirsten R. Galler

*Attorneys for Defendants*
CITY OF SANTA MONICA and
CITY COUNCIL OF THE CITY
OF SANTA MONICA

19